UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

|  |  |  |
|---|---|---|
| **MARY M. ZAPATA, ET AL.,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-cv-22 |
| | ) | |
| **THE UNITED STATES OF AMERICA, ET AL.,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### SUPPLEMENT TO THE UNITED STATES OF AMERICA'S MOTION TO DISMISS

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...........................................................................................................iiii

INTRODUCTION ......................................................................................................................... 1

ARGUMENT.................................................................................................................................. 2

    I.    The FTCA's Foreign Country Exception Bars All of the Plaintiffs' FTCA Claims.........2

    II.    FECA Also Bars All of the Plaintiffs' FTCA Claims. .......................................................5

    III.    The FTCA's Discretionary Function Exception Also Bars the Plaintiffs' FTCA
    Claims ...............................................................................................................................8

    IV.    The Plaintiffs' FTCA Allegations Concerning the ATF Agents' Conduct Should be
    Dismissed Because the Plaintiffs have Failed to Identify Any  Analogous Liability
    on the Part of Private Individuals in Like Circumstances. ...............................................10

    V.    Plaintiffs' Tort Allegations Concerning Their Requests for Information Also Fail to
    State a Claim....................................................................................................................11

    VI.    The Plaintiffs' Requests for Discovery Should be Denied...............................................13

CONCLUSION............................................................................................................................ 15

# TABLE OF AUTHORITIES

Cases

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................ 14

*Avasthi v. United States*,
  608 F.2d 1059 (5th Cir. 1979) ............................................................................ 5, 13

*Bennett v. Barnett*,
  210 F.3d 272 (5th Cir. 2000) .................................................................................. 6

*Benningfield v. City of Houston*,
  157 F.3d 369 (5th Cir. 1998) ................................................................................ 12

*BP America Production Co. v. Burton*,
  549 U.S. 84 (2006) .................................................................................................. 3

*Buchanan v. United States*,
  915 F.2d 969 (5th Cir. 1990) .................................................................................. 8

*Creditwatch, Inc. v. Jackson*,
  157 S.W.3d 814 (Tex. 2005) ................................................................................. 11

*Crider v. United States*,
  885 F.2d 294 (5th Cir. 1989) ................................................................................ 10

*Davila v. United States*,
  713 F.3d 248 (5th Cir. 2013) ................................................................................ 14

*DeFord v. Secretary of Labor*,
  700 F.2d 281 (6th Cir. 1983) .................................................................................. 6

*Elman v. United States*,
  173 F.3d 486 (3rd Cir. 1999) .................................................................................. 7

*Exch. Comm'n v. Spence & Green Chem. Co.*,
  612 F.2d 896 (5th Cir. 1980) ................................................................................ 13

*Freeman v. United States*,
  556 F.3d 326 (5th Cir. 2009) ........................................................................... 13, 14

*Greater Houston Transp. Co. v. Phillips*,
  801 S.W.2d 523 (Tex. 1990) ........................................................................... 10, 11

*Grijalva v. United States*,
781 F.2d 472 (5th Cir. 1986) ......................................................................... 5

*Gross v. Development Alternatives, Inc.*,
No. 12-1860, 2013 WL 2303766 (D.D.C. May 28, 2013)...................................... 4, 5

*Harbury v. Hayden*,
522 F.3d 413 (D.C. Cir. 2008) ......................................................................... 3, 4

*Hoffmann-LaRoche Inc. v. Zeltwanger*,
144 S.W.3d 438 (Tex. 2004)............................................................................ 12

*Kelly v. Syria Shell Petroleum Dev. B.V.*,
213 F.3d 841 (5th Cir. 2000) .......................................................................... 13

*Lane v. Pena*,
518 U.S. 187 (1996)....................................................................................... 3

*McDaniel v. United States*,
970 F.2d 194 (6th Cir. 1992) .......................................................................... 6

*McNeil v. United States*,
508 U.S. 106 (1993)....................................................................................... 4

*Mesa v. United States*,
837 F. Supp. 1210 (S.D. Fla. 1993) ................................................................. 10

*Rollins v. Marsh*,
937 F.2d 134 (5th Cir. 1993) .......................................................................... 4

*Saltsman v. United States*,
104 F.3d 787 .................................................................................................. 7

*Shuler v. United States*,
531 F.3d 930 (D.C. Cir. 2008)......................................................................... 9

*Smith v. United States*,
375 F.2d 243 (5th Cir. 1967) .......................................................................... 9

*Sosa v. Alvarez-Machain*,
542 U.S. 692 (2004)....................................................................................... 2, 4, 5

*Spotts v. United States*,
613 F.3d 559 (5th Cir. 2010) .......................................................................... 8

*St. Tammany Parish v. Federal Emergency Management Agency*,
556 F.3d 307 (5th Cir. 2009) .......................................................................... 8

*Sutton v. United States*,
   819 F.2d 1289 (5th Cir. 1987) ........................................................................................ 9

*Swafford v. Bank of America Corp.*,
   401 F. Supp. 2d 761 (S.D. Tex. 2005) .......................................................................... 12

*Udoewa v. Plus4 Credit Union*,
   457 Fed. A'ppx 391 (5th Cir. 2012) .............................................................................. 11

*United States v. Gaubert*,
   499 U.S. 315 (1991)........................................................................................................ 8

*United States v. S.A. Empresa de Viacao Aerea Rio Grandesnse (Varig Airlines,)*,
   467 U.S. 797 (1984)........................................................................................................ 8

*Walker v. Harris*,
   924 S.W.2d 375 (Tex. 1996)......................................................................................... 10

*Wright v. United States*,
   717 F.2d 254 (6th Cir. 1983) .......................................................................................... 7

Statutes

28 U.S.C. § 2675 (a) ........................................................................................................... 4

28 U.S.C. § 2680 (k) ................................................................................................... 2, 3, 13

5 U.S.C. § 8116(c) .............................................................................................................. 6

**INTRODUCTION**

The plaintiffs' Fourth Amended Complaint (FAC) should be dismissed for the same reason as their Third Amended Complaint, a lack of subject matter jurisdiction. The foreign country exception bars all of the plaintiffs' Federal Tort Claims Act (FTCA) allegations because these assertions are based on injuries suffered in a foreign country. Likewise, the Federal Employees' Compensation Act (FECA) bars all of the plaintiffs' FTCA allegations because SAs Zapata and Avila's injuries occurred in the performance of their duties as Immigration and Customs Enforcement (ICE) employees. The plaintiffs have also failed to plead facts that facially allege matters outside of the discretionary function exception. In addition, the allegations that Alcohol, Tobacco, Firearms and Explosives (ATF) agents had a legal duty to protect SAs Zapata and Avila from the criminal acts of a third person should be dismissed because under Texas law there is no analogous liability on the part of private individuals in like circumstances. Finally, the plaintiffs' intentional infliction of emotional distress assertion, based on the government's alleged failure to adequately respond to requests for information, fails to state a claim and is preempted by another remedy, the Freedom of Information Act.

On April 26, 2013, the United Stated filed a threshold Motion to Dismiss the plaintiffs' Third Amended Complaint based on lack of subject matter jurisdiction. *See* Dkt. No. 29. The plaintiffs responded on May 17, 2013, *see* Dkt. No. 40, and on May 22, 2013 the Court allowed the plaintiffs to "conduct discovery and amend their pleadings." Dkt. No. 43. That Order also allowed the defendants an opportunity to "amend or supplement their Motion to Dismiss." *Id*. On October 1, 2013, the plaintiffs filed their FAC. *See* Dkt. No. 86. While the FAC adds some additional factual and legal assertions, it does not change the substance of the plaintiffs'

assertions.  Therefore, this Supplement to the United States Motion to Dismiss addresses both the plaintiffs' Response, Dkt. No. 40, and their FAC.

Plaintiffs' Response and FAC also request discovery.  However, no amount of discovery will change the fact that SAs Zapata and Avila were attacked in Mexico while on duty. Therefore, no amount of factual development will change the fact that the plaintiffs' FTCA allegations are barred by both the foreign country exception and FECA.

ARGUMENT

### I.    The FTCA's Foreign Country Exception Bars All of the Plaintiffs' FTCA Claims.

The plaintiffs do not dispute that the majority of their claims, specifically those related to injuries suffered by SAs Zapata and Avila in Mexico, are barred by the foreign country exception.[1]  28 U.S.C. § 2680 (k).  It is clear from both the language of the foreign country exception itself, and the Supreme Court's interpretation of that language, that these FTCA claims are barred.  Pursuant to 28 U.S.C. § 2680(k), the United States has not waived sovereign immunity for "[a]ny claim *arising* in a foreign country." (Emphasis added).  In addition, the Supreme Court held "that the FTCA's foreign country exception bars *all* claims *based on any injury suffered in a foreign country*."  *Sosa v. Alvarez-Machain*, 542 U.S. 692, 712 (2004) (emphasis added).  Therefore, any FTCA claims based on injuries suffered by SAs Zapata and Avila when attacked by criminals in Mexico are clearly barred.[2]

The plaintiffs' argue, but cite no supporting legal authority, that two of their claims should not be barred by the foreign country exception.  Plaintiffs argue that both their emotional

---

[1]  In light of this statute and the case law interpreting the statute, it is not clear why the plaintiffs continued to include FTCA allegations for injuries that occurred in Mexico in their FAC.

[2]  This includes all of the allegations found in paragraphs 64-86 of the FAC.

distress claims and their damages based on an alleged difficulty in obtaining information concerning the attacks on SAs Zapata and Avila involved injuries that occurred in the United States and therefore are not barred by the foreign country exception.[3]  Response, p.10.  However, all of the alleged emotional distress and information sought are based on the attack in Mexico. FAC ¶¶ 87, 91 and 93.  Therefore, these alleged damages are barred by the "arising in a foreign country" language of 28 U.S.C. § 2680(k).  *See BP America Production Co. v. Burton*, 549 U.S. 84, 91 (2006) ("Unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning."); *see also Lane v. Pena*, 518 U.S. 187, 192 (1996) ("[A] waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign.")

*Harbury v. Hayden*, 522 F.3d 413 (D.C. Cir. 2008), involved a similar emotional distress argument.  That case was brought by the widow of a Guatemalan rebel fighter who was allegedly killed in Guatemala by persons working for the Central Intelligence Agency.  *Id*. at 414.  Like the plaintiffs in the case at issue, the widow argued that "some of the claimed injuries, such as her emotional distress, occurred in the United States, and that the FTCA's foreign-country exception therefore does not bar those claims against the Government."  *Id*. at 418.  The court disagreed and held:

> [T]o the extent Harbury alleges her own emotional injuries in the United States as a result of the death of her husband, those derivative claims similarly arise in Guatemala for purposes of the FTCA because they are based entirely on the injuries her husband suffered there.  A plaintiff in Harbury's situation cannot plead around the FTCA's foreign-country exception simply by claiming injuries such as "emotional distress" that are derivative of the foreign-country injuries at the root of the complaint.  Much like the now-defunct "headquarters doctrine," that practice would threaten to "swallow the foreign-country exception whole."

---

[3]  These allegations are found in paragraphs 87, 88, and 90-93 of the FAC.

> We follow the lead of *Sosa* and decline to allow this kind of creative pleading to water down the foreign-country exception to the FTCA.

*Id.* at 423.

Likewise, SA Avila's and the Zapata family's claims of emotional distress arose from and are based on the injuries suffered by SAs Zapata and Avila in Mexico. The emotional distress claimed as a result of the attack summarized in paragraph 87 of the FAC is exactly the same as the emotional distress claim in *Harbury*. In addition, the claimed damages for failing to provide sufficient information, should such a claim even exist, is also based on an "injury suffered in a foreign country." *Sosa*, 542 U.S. 712. *See also Gross v. Development Alternatives, Inc.*, No. 12-1860, 2013 WL 2303766, at \*5 (D.D.C. May 28, 2013) (holding foreign country exception bars claim for loss of consortium in the United States following arrest of husband in Cuba).

The plaintiffs' most recent FTCA claim, which was first brought in the FAC, alleges that SA Avila was retaliated against while working for ICE in Spain. Comp., ¶ 89. Like all of his other FTCA claims, which were based on an injury suffered in Mexico, this claim based on alleged injuries suffered in Spain is barred by the foreign country exception.[4] In this case, it is clear that all of the plaintiffs' FTCA claims arose from and are based on either the death and

---

[4] SA Avila also failed to exhaust his administrative remedies concerning these retaliation claims. *See* 28 U.S.C. § 2675 (a). *See also McNeil v. United States*, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."). This failure to include SA Avila's retaliation claims in his administrative claim is an additional reason the retaliation claims should be dismissed. *See* Exhibit 1, Plaintiffs Avila's Administrative claim. Finally, these employment related claims are preempted by the Civil Service Reform Act (CSRA). *See Rollins v. Marsh*, 937 F.2d 134, 140 (5th Cir. 1993) ("Every circuit facing this issue has concluded that the remedies provided by the CSRA preempt state-law remedies for adverse personnel actions. We follow and find that the [plaintiffs'] state-law claims are preempted by the CSRA.").

injuries suffered by SAs Zapata and Avila respectively in Mexico, or the alleged retaliation against SA Avila in Spain.

Finally, the plaintiffs argue, again with no case law or statute supporting their position, that the Foreign Country Exception to the FTCA should not apply in situations in which choice of law analysis does not require the use of foreign law. Response, pp. 11-12. However, this contention was rejected in *Sosa.* "The point would be well taken, of course, if Congress had written the exception to apply when foreign law would be applied. But that is not what Congress said." *Sosa*, 542 U.S. at 711; *see also Gross*, 2013 WL 2303766 at *4 (rejecting a similar attempt to circumvent the Foreign Country Exception by arguing that the claim did not require the use of foreign law.)

## II.    FECA Also Bars All of the Plaintiffs' FTCA Claims.

The plaintiffs' FTCA claims should be dismissed because they have failed to meet their burden of demonstrating that no substantial question exists as to whether SAs Zapata and Avila's injuries occurred in the performance of their duties as ICE employees. *See Avasthi v. United States*, 608 F.2d 1059, 1060 (5th Cir. 1979) ("The employee must first seek and be denied relief under FECA unless his injuries do not present any substantial question of compensability under that act."). Not only have the plaintiffs failed to meet the burden, but it is undisputed that the Department of Labor's (DOL) Office of Workers' Compensation Programs (OWCP) accepted SA Avila's claim for injury. Exhibit 2, DOL Declaration, dated November 6, 2013. *See also Grijalva v. United States*, 781 F.2d 472, 474 (5th Cir. 1986) (holding that FECA bars any individual who has received benefits under its provisions from suing the United States for that injury under the FTCA). In addition, the Acting Chief of the Branch of Regulations, Policy and Procedure for the Division of Federal Employee's Compensation, OWCP, DOL, has examined the plaintiffs' claims  and concluded that "there is a significant possibility" of coverage under

FECA for SA Zapata's death.  Exhibit 3, DOL Declaration, dated November 16, 2013.

Therefore, the plaintiffs' FTCA claims are barred because 5 U.S.C. § 8116(c) specifically

prohibits actions against the United States by an "employee, his legal representative, spouse,

dependents, next of kin, and any other person otherwise entitled to recover damages from the

United States . . . because of the [employee's] injury or death."

The fact that FECA benefits have been approved for SA Avila and that there is a

significant possibility they would be approved for SA Zapata's family also defeats the plaintiffs'

argument concerning whether emotional distress injuries are covered by FECA.  Response at

p.20.[5]  The Fifth Circuit has "yet to answer" the question concerning emotional distress claims,

but indicated that "where a substantial question exists at to FECA coverage, a tort action is

barred unless the Secretary of Labor determines that FECA does not apply."  *Bennett v. Barnett*,

210 F.3d 272, 277 (5th Cir. 2000) (internal quotation omitted).[6]  In *Bennett*, the court upheld the

district court's finding that a "substantial question" existed as to FECA coverage for emotional

distress claims and that "the plaintiffs could not maintain their FTCA actions unless and until the

Secretary of Labor determined that their claims were *not* covered by FECA."  *Id.*  In this case,

---

[5]  Plaintiffs rely primarily on *DeFord v. Secretary of Labor*, 700 F.2d 281, 290 (6th Cir. 1983), for their argument that emotional injuries are not covered by FECA.  "Subsequent to *DeFord*, however, the Sixth Circuit has described the language in *DeFord* stating that FECA does not apply to claims regarding mental distress as 'dictum.'"  *Saltsman v. United States*, 104 F.3d 787, 790 (6th Cir. 1997).  In *McDaniel v. United States*, 970 F.2d 194, 196-98 (6th Cir. 1992), the court held that FECA applied to, and therefore preempted, a claim of intentional infliction of emotional distress when the harassment of an employee triggered psychiatric hospitalization. Likewise, in *Saltsman*, the Sixth Circuit held that FECA provides the exclusive remedy not only for employees who suffered physical and emotional harm from gunshot wounds, but also for the spouses and a daughter of the injured employees who sought damages for emotional distress and loss of consortium and parental services.  104 F.3d at 790.

[6]  As indicated earlier, DOL, OWCP has accepted SA Avila's claim and determined that there is a significant possibility of coverage for SA Zapata's death.

FECA benefits for emotional distress related injuries have already been approved for SA Avila. *See* Exhibit 2.

The plaintiffs "dual capacity" argument is equally unavailing.  See Response, p.21.  Not only have the majority of jurisdictions rejected the dual capacity doctrine, but it does not apply to this case.  *See Elman v. United States*, 173 F.3d 486, 490 (3rd Cir. 1999) ("A majority of the courts of appeals that have considered similar claims have refused to adopt the dual capacity doctrine.").  In the limited jurisdictions that considered this argument, including the case cited by the plaintiffs, the employee brought suit against his or her employer for injuries unrelated to their employment.  For example, the case cited by plaintiffs, *Wright v. United States,* 717 F.2d 254 (6th Cir. 1983), involved a secretary who sued her hospital employer for injuries suffered not while on the job, but as a result of medical malpractice while being treated in the hospital in which she worked.[7]  In this case, there is no question, nor have the plaintiffs disputed, that SAs Zapata and Avila were performing their duties on behalf of the government when they were injured.  *See id.* at 259 ("The dual capacity doctrine has been utilized in a number of contexts where employees have been injured while their relationship to their employers has been other than that of employer-employee.")  In the case at bar, there is no "dual capacity relationship" between SAs Zapata and Avila and their employer (the United States) because these employees were injured while in the performance of their duties.  *See Saltsman* 104 F.3d at 791 (holding the dual capacity doctrine does not apply for employees who suffered their injuries at their work place during their work day.)  Therefore, FECA bars all of the plaintiffs' FTCA claims.

---

[7]  The Sixth Circuit has moved away from the dual capacity doctrine in subsequent cases.  *See Saltsman* 104 F.3d at 791 n.7 (6th Cir. 1997) ("The dual-capacity doctrine appears merely to represent a rewording of the standard inquiry under FECA of whether an employee suffered his injuries 'while in the performance of his duty.'").

### III.    The FTCA's Discretionary Function Exception Also Bars the Plaintiffs' FTCA Claims

The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandesnse (Varig Airlines)*, 467 U.S. 797, 808 (1984). The exception "covers only acts that are discretionary in nature, acts that involve an element of judgment or choice." *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (internal quotation omitted). The discretionary function exception applies regardless of whether the agency or employee exercised due care. *Buchanan v. United States*, 915 F.2d 969, 971 (5th Cir. 1990). At the motion to dismiss stage, the plaintiffs bear the burden of "pleading facts that facially allege matters outside of the discretionary function exception." *Spotts v. United States*, 613 F.3d 559, 568 (5th Cir. 2010).[8]

The plaintiffs' FAC alludes to a security notice that restricted travel on "certain highways," including the one used by SAs Zapata and Avila on February 15, 2011. FAC, ¶ 50.[9] However, the Government's Motion to Dismiss provided a copy of the Security Notice it believed was cited in the Complaint, and explained that there is no indication that this notice was applicable to operational missions such as that conducted by SAs Zapata and Avila. *See* Dkt.

---

[8]  Plaintiffs' contention that the "Government has the burden of proving the applicability of the Discretionary Function Exception" is wrong. Response, p.4. In considering this issue, the Fifth Circuit noted that there is a split in the circuits, and without deciding the issue, determined that in the context of a motion to dismiss, the plaintiff must advance a claim that is facially outside the discretionary function exception. *St. Tammany Parish v. Federal Emergency Management Agency*, 556 F.3d 307, 315 n.3 (5th Cir. 2009).

[9]  Plaintiffs' Third Amended Complaint selectively quoted from a January 18, 2011 Security Notice. Third Amended Complaint, ¶ 37. This Notice was attached to the Government's Motion to Dismiss. Dkt. No. 29, Exh. 1.

No. 29, Exhibit 1.  Therefore, as to the decision to send SAs Zapata and Avila on the mission in question, the plaintiffs have failed to meet their burden of pleading facts that allege matters outside of the discretionary function exception.

As to the plaintiffs' claims concerning ATF SAs exercising discretion in deciding when to arrest alleged straw purchasers, the government cited paragraph 148 of ATF Order 3310.4b which specifically provides discretion.[10]  The plaintiffs responded by citing an investigation which indicated that despite the clear language of paragraph 148, witnesses had provided "competing interpretations."  Response at 7.  However, the very exhibit cited by plaintiffs, Exhibit A, specifically states "[w]e did not identify any ATF policy in effect at the time of Operations Wide Receiver and Fast and Furious that expressly prohibited either of the 'gun walking' situations described to us by witnesses."  *Id*. at 14.  Therefore, while there may have been competing interpretations of this order, there is no evidence of any policy in effect at the time in question which specifically prohibited discretion in deciding when to arrest the alleged straw purchasers.  "Decisions regarding the timing of arrests are the kind of discretionary government decisions, rife with considerations of public policy, that Congress did not want the judiciary 'second-guessing.'"  *Shuler v. United States*, 531 F.3d 930, 934 (D.C. Cir. 2008).  *See also Sutton v. United States*, 819 F.2d 1289, 1293 (5th Cir. 1987) citing *Smith v. United States*, 375 F.2d 243, 247-48 (5th Cir. 1967) ("[L]aw enforcement decisions by the United States Attorneys on when, where, and how to investigate, and whether to prosecute, fall within the

---

[10] At the time in question, paragraph 148 of ATF Order 3310.4b provided that "[d]uring the course of illegal firearms trafficking investigations . . . the special agent may exercise the following options," including intervening in a weapons transfer if public and agent safety allows or allowing the weapons transfer "in order to further an investigation and allow for the identification of additional coconspirators who would have continued to operate and illegally traffic firearms in the future, potentially producing more armed crime."  Dkt. No. 29, Exhibit 2.

ambit of the discretionary function exception."); *Mesa v. United States*, 837 F. Supp. 1210, 1213 (S.D. Fla. 1993) ("The overwhelming consensus of federal case law establishes that criminal law enforcement decisions-investigative and prosecutorial alike-are discretionary in nature and, therefore, by Congressional mandate, immune from judicial review.").

The plaintiffs' second argument concerning this issue also strengthens the case for the discretionary function exception. The plaintiffs' citations to their Exhibit A indicate that the discretionary policy was changed in March of 2011. Response, p. 7-8. However, this simply indicates that up to and including the date of the attack on SAs Zapata and Avila (February 15, 2011) the ATF SAs had discretion concerning the timing of arrests. Finally, plaintiffs' Exhibit A provides additional support that the ATF SAs' alleged decision was susceptible to policy analysis, per the second prong of the *Gaubert* test, because it repeatedly indicates that arrests were delayed in an attempt to gather further information to disable a dangerous gun trafficking organization. Response, Exhibit A, pp. 103, 420 and 431.

IV.    **The Plaintiffs' FTCA Allegations Concerning the ATF Agents' Conduct Should be Dismissed Because the Plaintiffs have Failed to Identify Any Analogous Liability on the Part of Private Individuals in Like Circumstances.**

The plaintiffs do not dispute that, under Texas law, there was no duty on the part of law enforcement officers to arrest a suspect. *See Crider v. United States*, 885 F.2d 294, 297-98 (5th Cir. 1989) ("under existing Texas law a police officer owes no duty to a specific plaintiff to arrest a suspect."). Nor do they dispute that there is no "legal duty to protect another from the criminal acts of a third person or control the conduct of another." *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996) (citations omitted); *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990) ("Generally, there is no duty to control the conduct of third persons.") (citing Restatement (Second) of Torts § 315 (1965)). Instead, the plaintiffs attempt to avoid

10

dismissal of the claims against the ATF SAs by arguing that their actions were analogous to "provid[ing] services to another." Response, pp. 15-16. However, the plaintiffs have cited no cases for this proposition and common sense dictates that providing services to another is not analogous to conducting a criminal investigation. Nor have the plaintiffs provided any legal support for their contention that the ATF agents' conduct of a criminal investigation was somehow analogous to a public nuisance. This is especially true when under Texas law there is "no duty to control the conduct of third persons." *See Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990) ("Generally, there is no duty to control the conduct of third persons.") (citing Restatement (Second) of Torts § 315 (1965)). Therefore, the plaintiffs failed to meet their burden of demonstrating jurisdiction as to this part of their complaint because the ATF agents had no duty to the plaintiffs to arrest the straw purchasers at the time determined by the plaintiffs or to protect them from the criminal acts of third parties.

### V. Plaintiffs' Tort Allegations Concerning Their Requests for Information Also Fail to State a Claim

In addition to being barred by the foreign country and the discretionary function exceptions to the FTCA, as well as FECA, the plaintiffs' complaints regarding their alleged inability to obtain information concerning the circumstances surrounding the shooting of SAs Zapata and Avila fail to state a claim. For this allegation the plaintiffs cite intentional infliction of emotional distress which, under Texas law, is a "'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies." *Udoewa v. Plus4 Credit Union*, 457 Fed. A'ppx 391, 392 (5th Cir. 2012), quoting *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005). "Even if other remedies do not explicitly preempt the tort, their availability leaves no gap to fill." *Creditwatch, Inc.*, 157 S.W.3d at 186. In this case, the plaintiffs have already requested the information discussed in paragraphs 88, 90-92 of the FAC via the Freedom of Information

Act (FOIA), and continue to pursue the information on that statutory basis, along with monetary relief allowed by that statute.  *See* FAC ¶¶ 163-171.  "[I]f the gravamen of a plaintiff's complaint is the type of wrong that the statutory remedy was meant to cover, a plaintiff cannot maintain an intentional infliction claim regardless of whether he or she succeeds on, or even makes, a statutory claim."  *Swafford v. Bank of America Corp.*, 401 F. Supp. 2d 761, 764 (S.D. Tex. 2005), quoting *Hoffmann-LaRoche Inc. v. Zeltwanger*, 144 S.W.3d 438, 448 (Tex. 2004).  It is clear that this intentional infliction of emotional distress claim is based on the denial of their FOIA request which was summarized in the FAC as "requests for documentation related to the Zapata and Avila incident."  FAC, ¶167.  Because the plaintiffs' request for information claims are covered by their FOIA allegations, they cannot assert them as an intentional infliction of emotional distress claim.

Finally, even if the intentional infliction of emotional distress tort was not a "gap-filler," the plaintiffs' claim that they were denied information would fail because the plaintiffs have not demonstrated the elements of this tort which include: "(1) the defendant acted either intentionally or recklessly; (2) the conduct was extreme or outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress was severe." *Benningfield v. City of Houston*, 157 F.3d 369, 379 (5th Cir. 1998).  The plaintiffs have failed to provide any factual basis to claim that the denial of their requests for information was extreme or outrageous.  These claims were denied while there were ongoing criminal investigations resulting in prosecutions related to the shooting of SAs Zapata and Avila.  *See* Case 1:11-cr-00111; *United States of America v. Julian Zapata Espinoza* (D.D.C.).  Asserting the law enforcement privilege for information related to an on-going investigation and prosecution is clearly not extreme or outrageous conduct.

12

## VI.    The Plaintiffs' Requests for Discovery Should be Denied.[11]

"The party seeking discovery bears the burden of showing its necessity." *Freeman v. United* States, 556 F.3d 326, 341 (5th Cir. 2009), citing *Sec. & Exch. Comm'n v. Spence & Green Chem. Co.,* 612 F.2d 896, 901 (5th Cir. 1980).  This burden is "typically" met "by alleging the 'specific facts crucial to immunity which demonstrate[ ] a need for discovery.'"  *Freeman*, 556 F3d at 342 quoting *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 852 (5th Cir. 2000). In the case at issue, the plaintiffs have not requested any specific discovery concerning the fact that SAs Zapata and Avila were injured in a foreign country while they were performing government duties.  No amount of discovery will change the fact that the plaintiffs' FTCA claims stem from injuries suffered by SA Zapata and Avila while in a foreign country, which are barred by the foreign country exception.  *See* 28 U.S.C. § 2680(k).  Likewise, discovery is not necessary for the FECA bar issue.  There is no dispute that SA Avila received FECA benefits and that SA Zapata's family has failed to apply for such benefits.  By not applying for benefits, these plaintiffs have failed to demonstrate that there is no substantial question as to whether or not the injury occurred in the performance of the employee's duty.  *See Avasthi*, 608 F.2d at 1060 ("The employee must first seek and be denied relief under FECA unless his injuries do not present any substantial question of compensability under that act."); s*ee also Freeman*, 556 F.3d at 342 ("[A] party is not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely to produce facts needed to withstand a Rule 12(b)(1) motion.").  The burden on the plaintiffs is even greater where, as in the present case, '"the party seeking discovery is attempting to disprove the applicability of an immunity-derived bar to suit because

---

[11]  These reasons are in addition to those stated in the pending Motion to Stay Discovery Pending Appeal.  *See* Dkt. No. 74.

13

immunity is intended to shield the defendant from the burdens of defending the suit, including the burdens of discovery."'  *Davila v. United States*, 713 F.3d 248, 264 (5th Cir. 2013), quoting *Freeman*, 556 F.3d at 342.

The only specific discovery the plaintiffs request concerns the discretionary function exception.  Response, p.12.  The plaintiffs request to "utilize the discovery process to ascertain whether any policies or directives existed, beyond those already obtained, relating to the subject matters on which they based their negligence claims."  *Id.*  However, the plaintiffs' own Exhibit A specifically indicates that there are no policies or directives that prohibited the alleged conduct of the ATF agents in this case.  Response, Dkt. No. 40, Exhibit A, p. 14.  In addition, the plaintiffs have provided nothing but conclusory assertions to support their claim that SAs Zapata and Avila were sent to a prohibited area in violation of a mandatory directive.  *See Freeman,* 556 F.3d at 342 ("[P]laintiffs have failed to articulate a discrete discovery request that might cure the jurisdictional deficiency and have failed to otherwise specify where they might discover the necessary factual predicate for subject matter jurisdiction.").  *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions" and "only a complaint that states a plausible claim for relief survives a motion to dismiss.").

No amount of factual development or discovery can overcome the foreign country exception and the FECA bar in this case.  Likewise, the plaintiffs have to meet their burden of demonstrating the necessity or potential location of discovery related to the discretionary function exception.  Therefore, the plaintiffs' discovery requests should be denied and their FTCA claims dismissed.

**CONCLUSION**

For the foregoing reasons, all of the plaintiffs' FTCA allegations should be dismissed for lack of subject matter jurisdiction.  In addition, the portion of their intentional infliction of emotional distress assertion related to their inability to obtain information concerning the attack on SAs Zapata and Avila should be dismissed for failure to state a claim.

Dated: November 6, 2013                    Respectfully submitted,

                                           STUART F. DELERY
                                           Assistant Attorney General

                                           KENNETH MAGIDSON
                                           United States Attorney

                                           RUPA BHATTACHARYYA
                                           Director, Torts Branch

                                           C. SALVATORE D'ALESSIO, JR.
                                           Assistant Director, Torts Branch

                                           /S/ Edward J. Martin
                                           EDWARD J. MARTIN
                                           Attorney-In-Charge
                                           N.Y. Attorney Registration No. 2526739
                                           Admitted *Pro Hac Vice*
                                           U.S. Department of Justice
                                           Civil Division, Torts Branch
                                           P.O. Box 7146, Ben Franklin Station
                                           Washington, D.C. 20044
                                           Tel: 202-616-1024
                                           Fax: 202-616-4314
                                           Edward.Martin2@usdoj.gov
                                           Counsel for the United States

15

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 5.3, I hereby certify that on November 6, 2013, the foregoing

motion was served on counsel of record electronically by means of the Court's CM/ECF system.

In addition, copies were mailed to the two parties listed on the ECF docket as not receiving

electronic filings Manuel Barba.


Dated: November 6, 2013                         /S/ Edward J. Martin
                                                EDWARD J. MARTIN

16