United States District Court
Southern District of Texas
ENTERED

MAR 1 0 2014

David J. Bradley, Clerk of Court

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| MARY M. ZAPATA, ET. AL<br>*Plaintiffs,* | § § § | |
| v.<br>UNITED STATES, ET. AL<br>*Defendants.* | § § § § § § | Case No. 1:13-CV-22 |

## MEMORANDUM OPINION AND ORDER

Before the Court are the United States' Motion to Dismiss, [Doc. No. 29], Plaintiffs' Response, [Doc. No. 40], the United States' Supplement to their Motion to Dismiss, [Doc. No. 101], Plaintiffs' Response to Supplement, [Doc. No. 109], and the United States' Supplemental Reply, [Doc. No. 115]. Upon review of the motions, responses, and applicable law, this Court partially grants the United States' Motion to Dismiss. The issues addressed by this Order are whether the Plaintiffs' Federal Torts Claims Act ("FTCA") claims against the United States are barred by the FTCA foreign country exception or the Federal Employees Compensation Act ("FECA").

### I. BACKGROUND

In their Fourth Amended Complaint ("FAC"), [Doc. No. 86], Plaintiffs allege that on February 15, 2011, Immigration and Customs Enforcement ("ICE") Special Agents Jaime J. Zapata ("Agent Zapata") and Victor Avila, Jr. ("Agent Avila") were shot by drug cartel members during a mission in Mexico ("Mexico Mission Incident"). Agent Zapata died from his wounds, and Agent Avila was severely injured. Agent Zapata's parents, Mary and Amador Zapata, as well as Agent Zapata's Estate[1] and Agent Avila (collectively, "Plaintiffs") filed suit against the

---

[1] The estate is administered by Mary Zapata.

1

United States, individual federal defendants,[2] various Government departments,[3] automobile modification companies,[4] the federally licensed firearm dealers,[5] and the straw purchasers.[6]

While somewhat complex and containing many different causes of action, the operative complaint can be generally reduced to five overall areas of misconduct which serve as the basis for Plaintiffs' claims. First, Plaintiffs allege that the United States' gun-walking operations—Project Gunrunner and Operation Fast and Furious—delivered weapons to drug cartel members without any surveillance and that some of these guns were eventually used to kill Agent Zapata and wound Agent Avila.[7] Second, Plaintiffs allege that ICE supervisors in Mexico negligently sent Agents Zapata and Avila on a known-to-be-dangerous highway without adequate equipment or training in the face of readily available alternatives and in violation of policy. Third, Plaintiffs allege that the up-armored vehicle used in the Mexico Mission Incident was negligently designed because the armored doors swung open when the vehicle was placed in park. Fourth, Plaintiffs allege that multiple Federally Licensed Firearm Dealers knowingly sold firearms to straw purchasers and that these arms were ultimately used in the attack on Agents Zapata and Avila. Lastly, Plaintiffs allege that the Government covered up and continues to cover up the facts surrounding the gun-running operations and the details surrounding the Mexico Mission Incident. Agent Avila also alleges that the Government retaliated against him for requesting information about the mission.

---

[2] The individual federal defendants include: Raul O. Aguilar, Luis Alvarez, Lanny Breuer, Juan Gelista, Kenneth Melson, Jere T. Miles, William D. Newell, Anthony Salisbury, Hector Tarango, and David Voth.

[3] These departments are the Department of Justice and Department of Homeland Security.

[4] This includes O'Gara-Hess & Eisenhardt Armoring Co., L.L.C. and unknown vehicle manufacture/outfitters.

[5] The Federally Licensed Firearm Dealers include Off-Duty Enterprises, Inc., JJ's Pawn Shop, Inc., and unknown federally licensed firearm dealers.

[6] The straw purchasers include Ranferi Osorio, Otilio Osorio, Kelvin Morrison, Manuel Barba, Robert Riendfliesh, and Blandon Derrick Shaffer.

[7] Plaintiffs allege that "walking" is a law enforcement term describing a situation where law enforcement places evidence in the hands of suspects as part of an undercover operation or investigation without following up on where the evidence goes. *See* [FAC at 8 n. 1].

Within these five basic complaints, Plaintiffs raised various claims against multiple defendants. These include both FTCA claims and Freedom of Information Act ("FOIA") claims against the United States.[8]  This Order will focus on the Plaintiffs' FTCA claims against the United States, which in turn may be grouped into three major categories.  First, Plaintiffs raise claims based on the United States' alleged malfeasance/misfeasance/nonfeasance regarding the gun-walking operations and Mexico Mission Incident.  Plaintiffs invoke a number of legal theories, including negligence, [FAC at 16], negligent undertaking, [FAC at 17], created danger, [FAC at 18-19], negligence per se, [FAC at 20],[9] public nuisance, [FAC at 21], and possibly intentional infliction of emotional distress, [FAC at 21].[10]  These claims will be collectively referred to as the "Mexico Mission Incident claims."  Second, Plaintiffs allege intentional infliction of emotional distress by the Government based on the Government's withholding and covering up of relevant facts.  [FAC at 22].[11]  Third, Agent Avila also alleges that the

---

[8] These allegations include claims against the individual federal defendants under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971); against the Federally Licensed Firearm Dealers for negligent entrustment, gross negligence, and negligence per se; against the car manufactures for negligence, design defect, and negligent undertaking claims; against the straw purchasers for negligence, gross negligence, and negligence per se claims against; and against all Defendants for wrongful death as well as claims under the Texas Survival Statute.

[9] Plaintiffs' negligence per se claims are based on alleged violations of the Gun Control Act, 18 U.S.C. § 922, *et seq*, Federally Licensed Firearm dealer regulations, and the Arms Export Control Act, 22 U.S.C. § 2778.

[10] While it is clear that Mary and Amador Zapata raise emotional distress claims from the Government's alleged cover up, it is less clear whether they also plead emotional distress claims directly resulting from the Mexico Mission Incident.  Plaintiffs allege generally that the Government "placed weapons in the hands of criminals and Mexican drug cartel members and then failed to warn anyone that they had done this, thereby placing Agents Zapata and Avila in harm's way[,]" and that this conduct "ultimately caused Plaintiffs severe emotional distress . . . ." [FAC at 21-22 ¶ 87].  There are no Mexico Mission Incident allegations regarding whether the Government's actions were intentional, and Texas law does not recognize negligent infliction of emotional distress. *See Boyles v. Kerr*, 855 S.W.2d 593, 594 (Tex. 1993) ("We hold that there is no general duty in Texas not to negligently inflict emotional distress. A claimant may recover mental anguish damages only in connection with defendant's breach of some other legal duty.").  For the purposes of this Order, the Court will assume that Mary and Amador Zapata are raising emotional distress claims directly based on the Mexico Mission Incident.  This assumption should not be interpreted as a ruling on whether Mary and Amador Zapata could or should recover under FECA for their emotional distress claims based on the Mexico Mission Incident.

[11] Specifically, Plaintiffs allege that "[t]he United States refuses to answer any questions about the reasons behind Zapata and Avila being sent on this highway, unescorted, in an unsafe vehicle." [FAC at 22 ¶ 88].  Plaintiffs further allege that the United States refuses to answer questions "regarding the attack, the firearms allowed to enter into Mexico, and the United States' involvement." [FAC at 22 ¶ 90].

Government retaliated against him when he began asking questions, "forcing him to relocate, resign, or retire from his position in Spain without cause." [FAC at 22].

In response to these allegations, the United States filed a Motion to Dismiss. The Government argues that all of Plaintiffs' FTCA claims should be dismissed because: (1) private individuals in like circumstances would not face liability under state law as is required to state an FTCA claim; (2) the FTCA foreign country exception and discretionary function exception bars all of Plaintiffs' claims; and (3) the FECA bar precludes all of Plaintiffs' claims.

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal based on the plaintiff's "failure to state a claim upon which relief can be granted[.]" When considering a 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards Inc.*, 677 F.3d 1045, 1050 (5th Cir. 1982). The court must "construe [the] facts in the light most favorable to the nonmoving party, as a motion to dismiss under [R]ule 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). To survive a motion to dismiss, a claim must be "plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), with enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged[,]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. DISCUSSION

This Order will only address the effect of the FTCA foreign country exception and FECA bar on Plaintiffs' Mexico Mission Incident claims against the United States; the Court will issue subsequent orders addressing the Plaintiffs' emotional distress cover-up claims, Agent Avila's

retaliation claims against the United States, the Plaintiffs' FOIA claims, and Plaintiffs' claims against the other defendants.[12]

### A. The FTCA Foreign Country Exception

### i. Legal Background

The United States possesses sovereign immunity from suit unless it waives immunity. *Hercules Inc. v. United States*, 516 U.S. 417, 422 (1996) ("The United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.") (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)). The FTCA is one such sovereign immunity waiver. *See U. S. v. Orleans*, 425 U.S. 807, 813 (1976) (explaining that the FTCA is a limited waiver of sovereign immunity). Under the FTCA, "the United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances[.]" 28 U.S.C.A. § 2674 (West 2013); *see also* 28 U.S.C.A. § 1346(b) (West 2014) (stating that courts only have jurisdiction over tort claims against the United States "if a private person[ ] would be liable to the claimant in accordance with the law of the place where the act or omission occurred."). The plaintiff has the burden to demonstrate that the waiver applies. *Freeman v. US*, 556 F.3d 326, 334 (5th Cir. 2009). The existence of sovereign immunity divests courts of jurisdiction. *See FDIC v. Meyer*, 510 U.S 471, 475 (1994). Thus, if a plaintiff fails to prove sovereign immunity was waived, courts must dismiss the plaintiff's claims pursuant to the Federal Rules of Civil Procedure 12(h)(3).

---

[12] At the most recent hearing, the Court only had before it the counsel for the United States handling the FTCA claims. The Government's FTCA counsel did not feel comfortable addressing any FOIA matters and deferred to his co-counsel who was not in attendance. Although there are no pending motions regarding these claims, the Court was prevented from exploring those issues by counsel's absence.

The FTCA contains several exceptions withdrawing Congress' waiver of sovereign immunity, effectively precluding a plaintiff's corresponding claims. *See* 28 U.S.C.A. § 2680 (West 2014)[13]; *see also Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 485 (2006) (explaining that when the Section 2680 exceptions apply, sovereign immunity bars the claim).

---

[13] Section 2680 provides that the following tort claims may not be raised against the United States:

**(a)** Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

**(b)** Any claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter.

**(c)** Any claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer, except that the provisions of this chapter and section 1346(b) of this title apply to any claim based on injury or loss of goods, merchandise, or other property, while in the possession of any officer of customs or excise or any other law enforcement officer, if--

> **(1)** the property was seized for the purpose of forfeiture under any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense;
>
> **(2)** the interest of the claimant was not forfeited;
>
> **(3)** the interest of the claimant was not remitted or mitigated (if the property was subject to forfeiture); and
>
> **(4)** the claimant was not convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law.. [sic]

**(d)** Any claim for which a remedy is provided by chapter 309 or 311 of title 46 relating to claims or suits in admiralty against the United States.

**(e)** Any claim arising out of an act or omission of any employee of the Government in administering the provisions of sections 1-31 of Title 50, Appendix.

**(f)** Any claim for damages caused by the imposition or establishment of a quarantine by the United States.

**[(g)** Repealed. Sept. 26, 1950, c. 1049, § 13(5), 64 Stat. 1043.]

**(h)** Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided*, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

**(i)** Any claim for damages caused by the fiscal operations of the Treasury or by the regulation of the monetary system.

**(j)** Any claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war.

**(k) Any claim arising in a foreign country.**

**(l)** Any claim arising from the activities of the Tennessee Valley Authority.

**(m)** Any claim arising from the activities of the Panama Canal Company.

**(n)** Any claim arising from the activities of a Federal land bank, a Federal intermediate credit bank, or a bank for cooperatives.

28 U.S.C.A. § 2680 (West 2014) (emphasis added).

While the general rule is that "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign," *Lane v. Peña,* 518 U.S. 187, 192 (1996), FTCA exceptions are construed narrowly—thus favoring the plaintiff, *see United States v. Nordic Village, Inc.,* 503 U.S. 30, 34 (1992). This is due to the FTCA's "sweeping language" waiving sovereign immunity. *Id.* (quoting *United States v. Yellow Cab Co.,* 340 U.S. 543, 547 (1951)). Therefore, "the proper objective of a court attempting to construe one of the subsections of 28 U.S.C. § 2680 is to identify 'those circumstances which are within the words and reason of the exception'—no less and no more." *Kosak v. United States,* 465 U.S. 848, 853, n. 9 (1984) (quoting *Dalehite v. United States,* 346 U.S. 15, 31 (1953)).

The FTCA's foreign country exception found in Section 2680(k) rescinds the FTCA's sovereign immunity waiver for "[a]ny claim arising in a foreign country." 28 U.S.C.A. § 2680(k) (West 2014). The Supreme Court has explained that: "[t]he object being to avoid application of substantive foreign law, Congress evidently used the modifier 'arising in a foreign country' to refer to claims based on foreign harm or injury, the fact that would trigger application of foreign law to determine liability." *Sosa v. Alvarez-Machain,* 542 U.S. 692, 707-08 (2004). The Supreme Court has further explained that the foreign country exception "bars all claims *based on* any injury suffered in a foreign country, *regardless of where the tortious act or omission occurred.*" *Id.* at 712 (emphasis added). Applying this rule, the Supreme Court concluded that all of the *Sosa* plaintiff's FTCA claims against the United States were barred by the foreign country exception because they were based on an abduction in Mexico.[14]

---

[14] *Sosa* involved claims against the United States by a Mexican physician, Humberto Alvarez-Machain, who was abducted in Mexico. His captor was hired by Drug Enforcement Administration ("DEA") agents. *Id.* at 697-98. Alvarez had allegedly prolonged a DEA agent's life while the agent was being tortured, interrogated, and eventually killed. *Id.* After Alvarez was abducted from Mexico to the United States, he was arrested pursuant to a Grand Jury indictment, tried, and acquitted. Upon returning to Mexico, he filed an FTCA suit for claims against the Government.

### ii. Analysis

The Supreme Court's interpretation of the FTCA foreign country exception clearly prohibits all of the Mexico Mission Incident claims by Agent Avila and Agent Zapata's Estate. Regardless of where the underlying conduct occurred, all of these injuries were suffered on foreign soil. Therefore, these claims are dismissed.

Furthermore, to the extent that they exist, Mary and Amador Zapata's emotional distress claims stemming from the Mexico Mission Incident are also barred as claims "arising in" a foreign country. This Court has not found any Fifth Circuit case expounding on the scope of "arising in" under Section 2680(k) and the parties have not cited any cases in the Fifth Circuit containing a more detailed explanation. Nonetheless, another circuit has barred similar emotional distress claims due to the FTCA's foreign country exception. *See Harbury v. Hayden*, 522 F.3d 413 (D.C. Cir. 2008) *cert denied* 555 U.S. 881 (2008). In *Harbury*, the Government allegedly imprisoned, tortured, and executed the decedent in Guatemala. The decedent's wife raised several FTCA claims, including emotional distress and loss of consortium claims based on the injury in Guatemala. The D.C. Circuit held that these claims were "derivative" and barred by FTCA's foreign country exception "because they [were] based entirely on the injuries her husband suffered [in Guatemala]." *Id.* at 423. The *Harbury* court also reasoned that permitting such derivative claims would threaten to "'swallow the foreign-country exception whole.'" *Id.* (quoting *Sosa*, 542 US at 703). This reasoning is persuasive to the instant case. This Court holds that—to the extent they exist—Mary and Amador Zapata's emotional distress claims from the Mexico Mission Incident are barred.

In summary, Agent Avila was wounded and Agent Zapata was killed in Mexico. Therefore, all of Plaintiffs' claims directly related to these incidents—specifically, Agent

Zapata's Estate's death related claims and Agent Avila's personal injury claims—are barred by the FTCA's foreign country exception; sovereign immunity applies and the Court has no jurisdiction over these claims. Furthermore, all of Plaintiffs' claims deriving from the Mexico Mission Incident are also barred. This includes all of Mary and Amador Zapata's emotional distress claims except for their cover up claims.

## B. The Application of the Federal Employee Compensation Act ("FECA")

The Government also argues that the FECA bar precludes all of Plaintiffs' claims. Although the Plaintiffs' Mexico Mission Incident claims are barred by the FTCA foreign country exception, this Court will also analyze these FTCA claims under the FECA bar.

### i. Legal Background

FECA is a federal workman's compensation statute for the "disability or death of an employee resulting from personal injury sustained while in the performance of his duty . . . ." 5 U.S.C.A. § 8102 (West 2013). When FECA covers the injury, the statute broadly prohibits other claims:

> The liability of the United States or an instrumentality . . . with respect to the injury or death of an employee <u>is exclusive and instead of all other liability of the United States</u> . . . to the employee, his legal representative . . . and any other person otherwise entitled to recover damages from the United States or the instrumentality because of the injury or death . . . under a Federal tort liability statute.

5 U.S.C.A. § 8116(c) (West 2014) (emphasis added).

This FECA bar seeks to effectuate "the principal compromise—the 'quid pro quo'—commonly found in workers' compensation legislation: employees are guaranteed the right to

receive immediate, fixed benefits . . . but in return they lose the right to sue the Government." *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 194 (1983) (internal citations omitted).

Whenever the Secretary of Labor determines that FECA coverage exists, courts do not have jurisdiction over the corresponding FTCA claims; the Secretary of Labor's legal and factual conclusions are not subject to judicial review. *See* 5 U.S.C.A. § 8128 (West 2013); *see also, Sw. Marine, Inc. v. Gizoni*, 502 U.S. 81, 90 (1991) ("FECA contains an 'unambiguous and comprehensive' provision barring any judicial review of the Secretary of Labor's determination of FECA coverage. Consequently, the courts have no jurisdiction over FTCA claims where the Secretary determines that FECA applies.") (internal citations omitted). This is still true if the claimant does not receive compensation due to insufficient evidence of injury. *See Bennett v. Barnett*, 210 F.3d 272, 277 (5th Cir. 2000) (citing *White v. United States*, 143 F.3d 232, 234 (5th Cir. 1998)) (holding that—where the Secretary of Labor thought FECA coverage existed but denied compensation due to the claimant's lack of proof—the court had no jurisdiction over the corresponding FTCA claim).

Even when the Secretary of Labor has not made a specific FECA determination, courts still lack FTCA jurisdiction when a "substantial question" of FECA coverage exists. *See Bennett*, 210 F.3d at 277. Since the Secretary of Labor determines FECA coverage, the "substantial question" inquiry centers around anticipating the Secretary of Labor's treatment of the FECA claim: "[a] substantial question exists unless it is certain that the Secretary of Labor would find no coverage under FECA." *White v. United States,* 143 F.3d 232, 234 (5th Cir.1998) (citations omitted). The purpose of this analysis is to avoid "deny[ing] the Secretary the

opportunity to decide the question of coverage" absent certainty that she would not find coverage. *Id.* at 234.[15]

In cases involving a substantial question of FECA coverage, "a tort action is barred unless the Secretary of Labor determines that the FECA does not apply." *Bennett*, 210 F.3d at 277 (citing *Avasthi v. United States*, 608 F.2d 1059, 1060 (5th Cir. 1979)). "The employee must first seek and be denied relief under FECA unless his injuries do not present any substantial question of compensability under that act." *Avasthi v. United States*, 608 F.2d 1059, 1060 (5th Cir. 1979).

### ii. Analysis of Plaintiffs' Mexico Mission Incident Claims

Agent Avila's Mexico Mission Incident claims are clearly barred by FECA. It is undisputed that the Secretary of Labor granted Agent Avila FECA compensation for the Mexico Mission Incident. *See* [Doc. No. 29 Ex. 3] (Declaration of Jennifer Valdivieso—the Chief of the Branch of Regulations in the Policy and Procedure Division of Federal Employees' Compensation—briefly explaining Agent Avila's FECA compensation award). This compensation covered Agent Avila's physical injuries as well as certain emotional and mental injuries—specifically, Agent Avila's acute reaction to stress, posttraumatic stress disorder, and adjustment disorder with mixed anxiety and depression. [Doc. No. 101 Ex. 2] (Declaration of Amy DeRocher—Acting Chief of the Branch of Regulations, Policy and Procedure Division of

---

[15] In conducting the "substantial question" inquiry, the Fifth Circuit has previously examined both judicial case law as well as decisions by the Employees' Compensation Appeals Board (ECAB). *See, e.g., id.* at 234-36. Yet, this approach is not consistently applied to determine whether a substantial question exists. *See, e.g., Bennett v. Barnett*, 210 F.3d 272, 277 (5th Cir. 2000) (holding that a substantial question existed regarding whether plaintiff's FTCA claims were covered by FECA without reference to ECAB decisions).

Regardless, as discussed in the text, it is unnecessary to examine administrative hearings in this case; Agent Avila has already received FECA benefits. Agent Zapata's Estate would presumably be entitled to FECA benefits arising from the same Mexico Mission Incident, and the Government has virtually admitted this point. Mary and Amador Zapata's Mexico Mission Incident derivative emotional damage claims are thus subject to a substantial question of FECA coverage.

the Federal Employees' Compensation—further detailing Agent Avila's FECA compensation). Applying the precedent above, all of Agent Avila's FTCA claims based on these injuries are barred by FECA. Therefore all of his Mexico Mission Incident claims are barred.

The Estate of Agent Zapata's Mexico Mission Incident claims are subject to a substantial question of FECA coverage. This Court acknowledges that no final decision has been made regarding the Estate of Agent Zapata's FECA eligibility, but Plaintiffs' counsel admitted in open court that the Estate of Zapata has not actually applied for FECA compensation. The Zapata heirs impliedly conceded that they could apply for FECA compensation and that coverage would probably exist. The Secretary of Labor has also opined that a "significant possibility" of coverage exists. *See* [Doc. No. 29 Ex. 4 at 2] (Declaration of Jennifer Valdivieso); [Doc. No. 101 Ex. 3] (Declaration of Amy DeRocher with attached memorandum opinion regarding why there is a significant possibility Agent Zapata may receive FECA compensation). Presumably, no definitive decision has been made by the Secretary because the Zapatas have not actually applied for FECA benefits. Given that Agent Avila has already received compensation for the Mexico Mission Incident, it probable that the Secretary of Labor would grant Agent Zapata's Estate FECA compensation. At the very least, a substantial question of coverage exists. Under FECA, the Estate of Zapata's Mexico Mission Incident claims should be dismissed without prejudice until the Secretary of Labor finds the claims are not covered.[16] Zapata's Estate must first seek FECA compensation and be denied before raising FTCA claims.

---

[16] In the event of a substantial question, courts are not required to dismiss the case without prejudice. The Fifth Circuit has previously dictated that the case should be stayed. *See White v. United States*, 143 F.3d 232, 238 (5th Cir. 1998) (holding that the district court erred in denying the government's motion to stay the FTCA case pending a substantial question of FECA coverage); *see also Eure v. U.S. Postal Serv.*, 711 F. Supp. 1365, 1372 (S.D. Miss. 1989) ("This court agrees that these issues under the FTCA should be held in abeyance pending determination by the Secretary of Labor whether these matters are covered by the FECA."). Since the Mexico Mission Incident claims also fail under the FTCA's foreign country exception, dismissal is required.

Mary and Amador Zapata's Mexico Mission Incident emotional distress claims are derived from the Estate of Zapata's claims. As such, they should also be dismissed without prejudice under FECA, regardless of whether Mary and Amador Zapata will actually receive FECA compensation for these claims. The FECA bar prohibits claims derived from injuries covered by FECA: while Section 8102 generally provides that "[t]he United States shall pay compensation . . . for the *disability* or death of an employee resulting from personal injury sustained while in the performance of his duty [,]" 5 U.S.C.A. § 8102 (emphasis added), FECA bars all claims "*with respect* to the *injury* or death of an employee[,]" 5 U.S.C. § 8116(c) (emphasis added). Based on this reasoning, the Fifth Circuit has previously held that the FECA bar prohibits FTCA claims for injuries derived from already compensated claims. *See Grijalva v. United States*, 781 F.2d 472, 474-75 (5th Cir. 1986). *Grijalva* involved a federal employee who received FECA compensation for injuries suffered from another employee's negligent driving. *Id.* at 473. After receiving FECA benefits, the employee and her daughter brought additional FTCA claims against the United States, which included the daughter's claims for "loss of . . . support and services . . . ." *Id.* at 473-74. The Fifth Circuit held that the FECA bar prohibited all of the FTCA claims, including the plaintiff's daughter's "loss and support" claims. *Id.* at 475. The Fifth Circuit arrived at this conclusion by focusing on whether these claims were "'with respect to the injury or death of an employee[,]'" *id.* at 474-75 (internal citations omitted), and by concluding that the daughter's claims "clearly derive[d] directly from her mother's injuries." *Id.*; *accord Collins v. United States*, CIV.A. 10-1564, 2011 WL 976504, at *3 (E.D. La. Mar. 16, 2011) (applying *Grijalva*'s reasoning to bar an employee's wife from claiming derivative loss-of-consortium FTCA claims because FECA was the exclusive remedy). Here, all

13

of Mary and Amador Zapata's Mexico Mission Incident emotional distress claims are also derivative of an injury covered by FECA.

### iii. Plaintiff's Arguments Against the FECA Bar

Plaintiffs raise two objections to the application of the FECA bar. First, Plaintiffs argue that FECA does not cover their Mexico Mission Incident emotional distress claims and therefore does not bar their corresponding FTCA claims. [Doc. No. 40 at 2]. Second, Plaintiffs invoke the dual capacity doctrine, arguing that FECA does not apply because the United States was not acting as Agent Avila's and Zapata's employer when it engaged in the allegedly tortious conduct. *See* [Doc. No. 40 at 21-22]; [Doc. No. 109 at 6-7].

Plaintiffs' argument that the FECA bar is inapplicable because FECA does not cover their Mexico Mission Incident emotional distress claims is unavailing. First, for Agent Avila's claims, the Secretary of Labor already made a determination of FECA coverage which included emotional damages compensation. As discussed, this legal and factual conclusion is not subject to judicial review. *See* 5 U.S.C. § 8128. Second, the Fifth Circuit has applied *Grijalva*'s reasoning to bar a federal employee's pain and suffering claims as well as her loss of enjoyment of life claims. *See Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992). In *Benton*, the Fifth Circuit held that although plaintiff's claims were not compensated under FECA, "the exclusive remedy provision of the FECA bars [plaintiff's] claim for pain and suffering, future earnings, and general loss of enjoyment of life-injuries which derived from her physical injury for which she was already compensated under the FECA." *Id.* The Sixth Circuit has also held that an employee's intentional infliction of emotional distress claims were barred by FECA because he already received compensation for work related stresses. *See Jones v. Tennessee Valley Authority*, 948 F.2d 258, 265 (6th Cir. 1991) (holding that FECA barred plaintiff's intentional

infliction of emotional distress claims based on the employer's alleged retaliation to plaintiff's safety criticisms because FECA provided the exclusive remedy for all work related stresses). Therefore, the FECA bar applies despite the fact that Plaintiffs have alleged emotional damages claims. The Estate of Zapata's, Mary Zapata's, and Amador Zapata's FTCA Mexico Mission Incident claims must be dismissed without prejudice under FECA. As noted above, these FTCA claims are already barred by the FTCA's foreign country exception.

Plaintiffs attempted application of the dual capacity doctrine is unpersuasive. The dual capacity doctrine "treats the employer as a third party outside the protections of the workmen's compensation statute . . . if [the employer] possesses a second persona so completely independent from and unrelated to his status as employer that by established standards the law recognizes [him] as a separate legal person." *Wright v. United States*, 717 F.2d 254, 259 (6th Cir. 1983) (internal citations omitted). *Wright* was a medical malpractice case brought by an employee of the Veterans Administration Hospital for the employee's injuries she received as a patient. The employee was performing her administrative duties at the Veterans Administration Hospital when she experienced severe pain in connection with her pregnancy. *Id.* at 255. She was allegedly injured by the ensuing treatment, and filed an administrative claim with the Veterans Administration under the FTCA. *Id.* at 256. The Veterans Administration responded that plaintiff's exclusive remedy was under FECA because she was working as a governmental employee at the time of the injury. *Id.* In rejecting this characterization, the Sixth Circuit first emphasized that the medical injuries did not arise "out of the special zone of danger created by an obligation or condition of employment" as required by FECA's performance of duty test. *Id.* at 258. Next, the Sixth Circuit held that even if the injury was compensable under FECA, the dual capacity doctrine permitted plaintiff's FTCA suit because two distinct relationships between

15

Wright and the Government existed at the time of the injury: a patient-healthcare provider and an employee-employer relationship. *Id.* at 259-60.[17]

Several circuits have flatly rejected the dual capacity doctrine in the FECA context.[18] In the few FECA cases examining the dual capacity doctrine without rejecting it outright, the courts focused on the plaintiff's relationship with the employer at the time of the injury. Restated, the dual capacity doctrine is applied to determine whether an injury meets FECA's requirement for compensation by being sustained "in the [employee's] performance of . . . duty." *See Saltsman v. United States*, 104 F.3d 787, 791 n. 7 (6th Cir. 1997) ("The dual-capacity doctrine appears merely to represent a rewording of the standard inquiry under FECA of whether an employee suffered his injuries 'while in the performance of his duty.'") (internal citations omitted).

The only FECA dual capacity doctrine case within the Fifth Circuit that this Court has found did not accept or reject the dual capacity doctrine. *See Parker v. McDermott, Inc.*, CIV. A. 89-4269, 1990 WL 223011 (E.D. La. Dec. 18, 1990). Rather, the *Parker* court concluded the dual capacity doctrine would not have applied to its factual situation. The *Parker* court ultimately held that the dual capacity doctrine did not apply because the plaintiff did not allege his injuries occurred outside "his duties as an employee . . . ." *Id.* at *3.

---

[17] The *Wright* court's statement that the dual capacity doctrine can co-exist with FECA compensation for the same injury contains some tension. The *Wright* court essentially stated that the dual capacity doctrine relates to whether FECA's performance of duty test has been met. *Id.* at 259 ("The dual capacity doctrine merely allows the employee to sue his employer where the employer-employee relationship does not exist because the employer is acting in a second persona unrelated to his status as employer."); *accord Saltsman v. United States*, 104 F.3d 787, 791 n. 7 (6th Cir. 1997) ("The dual-capacity doctrine appears merely to represent a rewording of the standard inquiry under FECA of whether an employee suffered his injuries 'while in the performance of his duty.'") (internal citations omitted). If the employee's injury is compensable under FECA, presumably it is because the performance of duty test has been met. In these cases, the dual capacity test by definition has not been satisfied. Therefore, one could argue that it is unclear how the dual capacity doctrine permits FTCA claims for the injuries compensated by FECA because the former dictates that the injuries did not exist in the performance of duty while the latter requires the opposite holding.

[18] The Eleventh Circuit has rejected the theory because it "effectively circumvent[s] the comprehensive scheme of federal workmen's compensation established by Congress *via* statutes such as . . . FECA." *Wilder v. United States*, 873 F.2d 285, 289 (11th Cir. 1989); *see also Votteler v. United States*, 904 F.2d 128, 130-31 (2d Cir. 1990) (rejecting the dual capacity doctrine as incompatible with FECA).

Similarly, this Court does not need to resolve whether the dual capacity doctrine will be accepted within the Fifth Circuit in the FECA context because, even if the doctrine were to be accepted by the Fifth Circuit, the dual capacity doctrine does not rescue Plaintiffs' Mexico Mission Incident claims from the FECA bar. Agent Avila has already received FECA compensation for both physical and mental injuries from the Mexico Mission Incident. Permitting Agent Avila to bring additional Mexico Mission Incident FTCA claims against the United States' "second persona" would compromise the comprehensive recovery FECA provides. Furthermore, by granting Agent Avila FECA compensation for the Mexico Mission Incident, the Secretary of Labor has made an unreviewable decision that Agent Avila's injuries were suffered "while in the performance of his duty." Application of the dual capacity doctrine to this 'performance of duty' inquiry would amount to judicial review of the Secretary of Labor's conclusion, in violation of Section 8128.

A parallel analysis applies to the Mexico Mission Incident claims of Agent Zapata's Estate, Mary Zapata, and Amador Zapata. As discussed above, there is a substantial question regarding whether Agent Zapata is entitled to FECA compensation. Since Mary and Amador Zapata's Mexico Mission Incident claims derive from Agent Zapata's Mexico Mission Incident injuries and subsequent death, these claims are also subject to a substantial question of FECA coverage. Therefore, the proper action under FECA is to dismiss these claims unless the Secretary of Labor determines that FECA does not cover these injuries.

Plaintiffs insist that the dual capacity doctrine applies because the doctrine focuses on the employer's actions rather than the employee's actions, and that the United States was not acting as Agent Zapata's and Avila's employer during its allegedly tortious actions. [Doc. No. 109 at 6-7] (citing *Elman v. United States*, 173 F.3d 486 (3d Cir. 1999)). This response is unavailing

for three reasons. First, *Elman* does not support Plaintiffs' position because, in that case, the Third Circuit rejected the dual capacity doctrine as being inconsistent with FECA. Second, the dual capacity doctrine as interpreted in most FECA cases relates to a question of whether an injury arose in the scope of employment. A focus solely on the employer's actions would not adequately address this inquiry. Third, Plaintiffs provide little argument—much less any authority—supporting their latter assertion that the United States was not acting as Agent Zapata's and Avila's employer when it ordered them on a mission to gather equipment in Mexico or engaged in gun-walking operations as part of a law enforcement investigation.

In essence, the Plaintiffs are asking this Court to apply the dual capacity doctrine in a somewhat unusual way. While not stating it directly, their argument seems to be that there are some acts that are so egregious—either because they are illegal or reckless—that when committing such acts the United States steps out of its role as an employer of those injured or killed as a result and into a role in which it should be made to answer as any other tortfeasor would. Plaintiffs' Complaint fails to specifically identify or describe what this secondary role would be. The Court is sympathetic to this argument—especially if the facts as pleaded are true. Under the facts described in the Complaint, it is hard to imagine a more ill-conceived plan. Nevertheless, the fact that the United States willingly participated in conduct that can be characterized as illegal, grossly negligent, or merely misguided does not change its status as an employer *vis-à-vis* Agents Zapata or Avila. Nor does it change their status as employees of the United States at the time of the mishap. Even assuming the pleadings to be accurate in their description of the malfeasance involved, Agents Avila and Zapata were attacked in Mexico during the performance of their duties as ICE Special Agents and the misconduct by others in the

Government does not alter this conclusion, even if such conduct caused or contributed to this tragedy.

## IV. CONCLUSION

For the reasons stated, this Court partially grants the United States' Motion to Dismiss. With respect to Plaintiffs' FTCA claims against the United States, all of the Estate of Agent Zapata's FTCA claims are dismissed; Agent Avila's FTCA claims other than his retaliation and cover-up claims are dismissed; and all of Mary and Amador Zapata's FTCA claims other than their cover-up emotional distress claims are dismissed. Plaintiffs' remaining FTCA claims against the United States—Agent Avila's retaliation and cover up claims as well as Mary and Amador Zapata's cover-up emotional distress claims—as well as Plaintiffs' FOIA claims will be addressed in subsequent opinions.

Signed, this 10th day of March, 2014.

Andrew S. Hanen
United States District Judge