|  |  |
|---|---|
| **MARY M. ZAPATA, ET AL.,** | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 1:13-cv-22 |
| | ) |
| **THE UNITED STATES OF AMERICA, ET AL.,** | ) |
| | ) |
| Defendants. | ) |
| | ) |

## REPLY TO PLAINTIFFS' RESPONSE TO THE SUPPLEMENT TO THE INDIVIDUAL FEDERAL DEFENDANTS' MOTION TO DISMISS

### INTRODUCTION

There is no legal basis for the plaintiffs' *Bivens* suit. The plaintiffs' supplemental response simply repeats their previous unsupported legal contentions, despite overwhelming legal authority to the contrary. For example, the plaintiffs do not cite a single case that holds the Federal Employee Compensation Act (FECA), 5 U.S.C. § 8101 et seq., and other federal employment related entitlements, are not special factors precluding a constitutional tort remedy for Special Agents (SAs) Zapata's and Avila's work-related injuries.

Likewise, the plaintiffs' *Bivens* case cannot survive the fact that the Fifth Circuit has "never explicitly adopted the state-created danger theory." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 864 (5th Cir. 2012) (en banc). Indeed, the Fifth Circuit has "consistently cautioned against finding liability under the state-created danger theory based on ineffective policy or practice in cases where the plaintiff's injury is inflicted by a private actor." *Id.* at 866. The individual federal defendants are therefore entitled to qualified immunity because

the plaintiffs' theory of causation, state-created danger, was not a clearly established

constitutional violation at the time of the incident in question. *See McClendon v. City of

Columbia*, 305 F.3d 314, 332 n.12 (5th Cir. 2002) ("The reluctance of this court . . . to embrace

some version of the state-created danger theory despite numerous opportunities to do so suggests

that, regardless of the status of this doctrine in other circuits, a reasonable officer in this circuit

would, even today, be unclear as to whether there is a right to be free from 'state-created

danger.'"). The individual federal defendants are also entitled to qualified immunity because the

plaintiffs have failed to allege that their conduct violated a constitutional right. Despite the

plaintiffs' contention otherwise, discovery would have no effect on these legal issues.

Finally, with the exception of Texas residents Tarango and Gelista, this court lacks

personal jurisdiction over the nonresident federal defendants because plaintiffs allege no suit-

related conduct between these defendants and Texas. *See Walden v. Fiore,* 134 S. Ct. 1115,

1121 (2014) ("For a State to exercise jurisdiction consistent with due process, the defendant's

suit-related conduct must create a substantial connection with the forum State.").

## ARGUMENT

### I. Special Factors Counsel Against Creating a Constitutional Tort Remedy for the Plaintiffs' Claims Against the Individual Federal Defendants.

Despite the opportunity to file two separate responses in this case, the plaintiffs have

failed to cite a single case, or any other legal authority, indicating that the Federal Employees'

Compensation Act (FECA), and other employment related entitlements, are not "special factors"

precluding a *Bivens* remedy for federal employees, or their heirs, where the former are injured in

the course of their employment. This failure to provide any legal support for their argument, in

the face of ten cases cited by the individual federal defendants from various districts and circuits,

is a clear indication that the plaintiffs' *Bivens* claims should be dismissed. *See* Dkt. Nos. 32 at 5-

2

7 and 144 at 4-6. Instead, the plaintiffs continue to argue, with no legal support, that "the existence of a *possible* availability of *partial* recovery under the Federal Employee Compensation Act ("FECA") does not preclude the Court's recognition of a *Bivens* remedy for the Individual Defendants' violation of Plaintiffs' constitutional rights." Dkt No. 153 at 3.

This unsupported assertion is wrong for several reasons. First, FECA and related employment entitlements are readily available, and have already been provided to the plaintiffs. SA Avila received FECA benefits for his initial physical injuries and is "presently receiving total disability compensation and payment of medical bills." Dkt. No. 144, Exhibit 1. This Court has previously noted the applicability of FECA to the Zapata plaintiffs. *See* Dkt. No. 127 at 12 ("Given that Agent Avila has already received compensation for the Mexico Mission Incident, it [is] probable that the Secretary of Labor would grant Agent Zapata's Estate FECA compensation.") Likewise, all of the plaintiffs in this case are entitled to any benefits provided by the Federal Employment Retirement System (FERS). *See Terry v. Newell*, No. 12-cv-2659, 2013 WL 6048914 at *3 (D. Ariz. Nov. 15, 2013) ("The FERS provides disability and death benefits to federal employees or their survivors.") Finally, each of the Zapata plaintiffs has received Public Safety Officers' Benefits Act (PSOBA) benefits of $159,055.82 for a total benefit of $318,111.64. Dkt. No. 144, Exhibit 2.

Second, "it is irrelevant to a special factors analysis whether the laws currently on the books afford [the plaintiff] . . . an adequate federal remedy for his injuries." *United States v. Stanley*, 483 U.S. 669, 683 (1987) (internal quotation marks omitted). *See also Berry v. Hollander*, 925 F.2d 311, 315 (9th Cir. 1991) (holding that although FECA and other administrative remedies available to the plaintiff, a Veteran's Administration physician, "d[id] not guarantee full and independent compensation for [the] constitutional violations suffered . . .

they do indicate a congressionally-authorized and comprehensive remedial scheme sufficient to preclude additional forms of relief" such as the constitutional tort claim that was sought by the plaintiff in that case.) Therefore, the plaintiffs' claim that FECA only provides for a "*partial recovery*" is of no legal significance to the special factor analysis.

In addition, the plaintiffs rely on a number of cases that cite *Allman v. Hanley*, 302 F.2d 559 (5th Cir. 1962), a common law tort case decided almost ten years prior to *Bivens*.[1] Dkt. No. 153 at 5. None of these cases involve allegations of constitutional violations, nor do they include an analysis of the special factors that preclude a court from implying a *Bivens* remedy.[2] *Allman* concerned a medical malpractice common law tort suit brought by one federal employee against other federal employees for negligent surgery. 302 F.2d at 560. Therefore, that case is inapposite because it did not involve the type of analysis which resulted in the Supreme Court stating that "in most instances we have found a *Bivens* remedy unjustified." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007); *see also Ponce v. U.S. Government*, No. 3:11-cv-172, 2013 WL 6177812 at *9 (D. Or. Nov. 21, 2013) ("this court will follow the clear trend of the Supreme Court and other federal courts and decline the opportunity to expand *Bivens* in this [complaints relating to on-the-job injuries to federal employees] context.").

---

[1] As noted in one of the cases cited by the plaintiffs, *Salazar v. Ballesteros*, 17 F. App'x. 129, 131n.1 (4th Cir. 2001) (unpublished), the *Allman* holding that one federal employee can sue another in common law tort cases is generally inapplicable since passage of the Westfall Act, codified at 28 U.S.C. § 2679(b)(1) and (d), which provides immunity for Federal employees from personal liability for common law torts committed within the scope of their employment.

[2] Plaintiffs cite *Allman v. Hanley*, 302 F.2d 559, 563 (5th Cir. 1962), *Heathcoat v. Potts*, 790 F.2d 1540, 1543-44 (11th Cir. 1986) and *Bates v. Harp*, 573 F.2d 930, 935 (6th Cir. 1978) as examples of courts finding "*Bivens* actions appropriate to compensate for violations of a plaintiff's Fifth Amendment Due Process rights." Dkt. No. 153 at 9. As indicated above, none of these are *Bivens* cases, but instead are common law tort cases.

Finally, the plaintiffs make a number of arguments that were discounted in *Terry*. First, the plaintiffs argue that FECA, FERS and PSOBA do not "provide for a public forum, with a neutral arbitrator, and an appellate process." Dkt. No. 153 at 7. However, *Terry* pointed out that the Supreme Court has not required "that federal remedies provide a full panoply of due process protection before a *Bivens* action is precluded. To the contrary, *Bivens* actions are foreclosed 'where Congress has provided *some* mechanism for relief that it considers adequate to remedy constitutional violations.'" 2013 WL 6048914 at *4 quoting *Moore v. Glickman*, 113 F.3d 988. 991 (9th Cir. 1997). Second, the plaintiffs argue that these statutes do not provide "any deterrence for government wrongdoing." Dkt. No. 153 at 7. Again, *Terry* rejected the plaintiffs' contention that a *Bivens* remedy should be implied whenever a remedial scheme fails to provide a penalty on the government defendants. 2013 WL 6048914 at *4. "The Supreme Court has made clear during the last 30 years that it is not the prerogative of the judiciary to create *Bivens* causes of action whenever a judge deems a Congressional remedial scheme to be deficient in some respect." *Id.* (citations omitted).

In the end, numerous federal courts have held that FECA, and other federal employment related entitlements, are special factors precluding a constitutional tort remedy for federal employment related injuries. Plaintiffs have failed to cite a single case, or any persuasive authority, that disagrees with these holdings.

II. **Qualified Immunity Bars the Plaintiffs' Claims Against the Individual Federal Defendants.**

Plaintiffs provide no relevant legal support for their arguments that qualified immunity should not apply to the individual federal defendants in this case. The plaintiffs' first argument, that the state-created danger theory was clearly established as to the individual federal defendants because other circuits have allowed that type of cause of action, has been considered

5

by the Fifth Circuit and rejected. *See McClendon*, 305 F.3d at 332 n.12 ("The reluctance of this court . . . to embrace some version of the state-created danger theory despite numerous opportunities to do so suggests that, regardless of the status of this doctrine in other circuits, a reasonable officer in this circuit would, even today, be unclear as to whether there is a right to be free from 'state-created danger.'"). *See also Whitley v. Hanna*, 726 F.3d 631, 639 n.5 (5th Cir. 2013) ("[T]his court has not adopted the state-created danger theory, . . . and Whitley wisely has disclaimed reliance on it."). In addition, "given the inconsistencies and uncertainties within this [other circuits] alleged consensus of authorities, an officer acting within the jurisdiction of this court could not possibly have assessed whether his or her conduct violated this right in the absence of explicit guidance from this court or the Supreme Court." *Id.* at 331-32. As noted above, there has been no explicit guidance from the Fifth Circuit or the Supreme Court concerning the state-created danger theory. *See Rios v. City of Del Rio*, 444 F.3d 417, 422 (5th Cir. 2006) ("[N]either the Supreme Court nor this court has ever either adopted the state-created danger theory or sustained a recovery on the basis thereof."). Therefore, the plaintiff's alleged constitutional violation could not possibly have been clearly established.

The plaintiffs' next argument, that the Fifth Circuit would likely adopt the state-created danger theory under the facts of this case is both wrong and irrelevant. The argument is wrong because even if the Fifth Circuit adopted it, the plaintiffs' allegations would not support a state-created danger cause of action. There are no allegations that the so-called "Gunrunner Defendants" were aware of any risk of danger to SAs Zapata and Avila in Mexico. *See Doe ex rel. Magee*, 675 F.3d at 865. ("Critically, this court has explained that the state-created danger theory is inapposite without a known victim.") (internal citation and quotation marks omitted); *Lester v. City of Coll. Station*, 103 F. App'x. 814, 815-16 (5th Cir. 2004) ("[E]ven if it is assumed

that the state-created theory applies, liability exists only if the state actor is aware of an *immediate danger facing a known victim*.") (emphasis added).

Plaintiffs' allegations with regard to the so-called "Mexico Supervisors" similarly fail to state a claim under the state-created danger theory because plaintiffs' allegations do not establish that "the behavior of the governmental officer[s] is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998); *see also Doe ex rel. Magee*, 675 F.3d at 867-68 (explaining that substantive due process is violated only when action at issue "shocks the conscience"). While the actions of the "Mexico supervisors" may be second-guessed after the fact, these supervisors are alleged to have sent trained agents to perform a mission via public roads in an armored vehicle. Thus, the Fifth Circuit would not adopt the state-created danger theory based on the plaintiffs' allegations because those allegations are insufficient to state a Fifth Amendment claim against the individual federal defendants.

As to the irrelevance of their argument, even if the Fifth Circuit did adopt the state-created danger theory based on the facts of this case, the individual federal defendants would still be dismissed because the cause of action was not clearly established in February of 2011. The *en banc* Fifth Circuit indicated that they "never explicitly adopted the state-created danger theory" as of 2012. *Id*. at 864. Therefore, the plaintiffs' 2011 allegations could not possibly have been a clearly established constitutional violation, and no future decision by the Fifth Circuit can change this fact.

**III.** **<u>*Brown v. Nationsbank Corp.*, 188 F.3d 579 (5th Cir. 1999) is Inapplicable to This Case.</u>**

There are a number of reasons that plaintiffs' "alternate theory of recovery," that a *Bivens* action should be available to alleged "victims" of government sting operations, fails in this case.

Dkt. No. 153 at 15. First and foremost, *Brown* is a case where the individual governmental defendants were alleged to have directly injured the plaintiff. *See Brown*, 188 F.3d at 583-84 (describing FBI undercover sting operation); *id.* at 592 (holding that plaintiff's "allegations that federal agents inflicted damages on him, an innocent non-target, during this particular undercover operation and refused him compensation states a claim under *Bivens*"). But, in this case, the individual federal defendants are not alleged to have directly harmed SAs Zapata and Avila; instead, it is undisputed that SA Zapata was murdered, and SA Avila shot, by members of a Mexican drug trafficking organization. *See* Fourth Amended Complaint (FAC) ¶ 55. It is for this reason that plaintiffs rely on the state-created danger theory of liability, which applies not when the individual governmental defendants directly cause the plaintiff's injury, but instead when "the state actor created or knew of a dangerous situation and affirmatively placed the plaintiff in that situation." *Doe ex rel. Magee*, 675 F.3d at 864. Because the individual federal defendants did not themselves cause SAs Zapata's and Avila's injuries, *Brown* does not apply.

*Brown* also does not apply due to the unique factual circumstances of that case. In *Brown*, an undercover FBI agent, posing as a wealthy investor, contacted the plaintiffs stating that he was looking for an aerospace firm to form a partnership with his firm to gain contracts with NASA and its contractors. *Brown*, 188 F.3d at 583. The plaintiffs "were not targets of the sting operation, but were selected by the FBI as entities that could be used in order to gain access to the aerospace community." *Id.* Over the course of two years, the FBI, among other things, (1) purported to hire one of the plaintiffs as the Chief Financial Officer and Vice President of another company supposedly owned by the wealthy investor; (2) promised to lend the plaintiffs millions of dollars in venture capital; (3) caused the plaintiffs to work hundreds of hours and spend a large amount of money bidding on contracts for an ultimately nonexistent device; and

(4) persuaded one of the plaintiffs to leave his job in the aerospace industry, causing him to dissolve his business relationship with the other plaintiffs and to make extensive arrangements to leave the country and sell his home. *Id.* at 583-84. Given the vast differences in the factual circumstances at issue in *Brown* and those alleged in the instant case, *Brown* has no applicability here. While "a case directly on point" is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011). Nothing about the Fifth Circuit's decision in *Brown* would have made it clear to the individual federal defendants that their conduct "was unlawful in the situation [they] confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

Plaintiffs appear to view *Brown* as relevant because both cases allegedly involved "an undercover operation by the government" that "evolved into a disastrous boondoggle" consuming "significant time and man-hours" and ultimately injuring "innocent non-targets." Dkt. No. 153 at 15-16. This is precisely the "high level of generality" that the Supreme Court has admonished courts to avoid when defining clearly established law. *al-Kidd*, 131 S. Ct. at 2084. *See, e.g., Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011) ("When considering a defendant's entitlement to qualified immunity, . . . we must be able to point to controlling authority—or a 'robust "consensus of persuasive authority"'—that defines the contours of the right in question with a high degree of particularity.") (quoting *al-Kidd*, 131 S. Ct. at 2084). Thus, because it involves individual governmental defendants who directly caused the plaintiff's injuries, and because it involves vastly different factual circumstances, *Brown* has no relevance here.

**IV.     The Plaintiffs Are Not Entitled to Any Discovery.**

"The party seeking discovery bears the burden of showing its necessity." *Freeman v. United* States, 556 F.3d 326, 341 (5th Cir. 2009), citing *Sec. & Exch. Comm'n v. Spence & Green Chem. Co.,* 612 F.2d 896, 901 (5th Cir. 1980). This burden is "typically" met "by alleging the 'specific facts crucial to immunity which demonstrate[ ] a need for discovery.'" *Freeman*, 556 F.3d at 342 quoting *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 852 (5th Cir. 2000). In this case it is clear that no discovery is needed to consider the legal issue that FECA and other federal employment-related entitlements are special factors precluding a constitutional tort remedy for SAs Zapata's and Avila's work-related injuries.

A district court may only defer its qualified immunity ruling, as the plaintiffs request, if "'the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity.'" *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) quoting *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994 (5th Cir. 1995). This plaintiffs have failed to do. There is no discovery necessary to determine the issue of qualified immunity because the Fifth Circuit has repeatedly indicated that they "never explicitly adopted the state-created danger theory" and therefore there can be no clearly established violation for allegations alleging that theory. *Doe ex rel. Magee*, 675 F.3d at 864. Nor would discovery change the fact that even had the Fifth Circuit adopted the state-created danger theory of liability, the plaintiffs have failed to state such a cause of action. *See* Section II, *supra.* The burden on the plaintiffs is even greater where, as in the present case, "'the party seeking discovery is attempting to disprove the applicability of an immunity-derived bar to suit because immunity is intended to shield the defendant from the burdens of defending the suit, including the burdens of discovery.'" *Davila v. United States*, 713 F.3d 248, 264 (5th Cir. 2013), quoting *Freeman*, 556 F.3d at 342.

**V.**     **With the Exception of Texas Residents Tarango and Gelista, This Court Lacks Personal Jurisdiction Over the Individual Federal Defendants.**

Plaintiffs fail to supplement their response to the lack of personal jurisdiction argument in this case, despite the fact that the Supreme Court has recently ruled in a case involving a nonresident federal defendant. *See Walden,* 134 S. Ct. at 1119. (Petitioner was "a deputized agent of the Drug Enforcement Administration (DEA)"). *Walden* indicated that the "inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." 134 S. Ct. 1121 (internal quotations omitted). However, the plaintiffs have incorrectly argued that individual federal defendants "can have sufficient minimum contacts with the forum by virtue of (1) his supervisory capacity over matters within the forum state and (2) the contacts his agency/department have with the forum state." Dkt. No. 52 at 19.

Merely having "supervisory capacity over matters within the forum state" does not suffice for specific personal jurisdiction, when, as in this case, the supervisory defendants' suit-related conduct was not connected to Texas. *See Walden*, 134 S. Ct. at 1121 ("For a state to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."). Because the plaintiffs have not alleged any suit-related conduct between the nonresident individual federal defendants and Texas, there is no specific personal jurisdiction over these defendants. *See* Dkt. No. 144 at 15-16.

Likewise it follows that a federal employees' agency having contacts with a forum state does not suffice for specific personal jurisdiction. The Court in *Walden* found no personal jurisdiction, despite the fact that the petitioner was working for the DEA, an organization with nationwide contacts. 134 S. Ct. at 1122 (the relationship must arise out of "contacts that the defendant *himself*" creates with the forum state.") (citation omitted). In this case, personal

11

jurisdiction is lacking because the plaintiffs have failed to allege any conduct by the eight individual federal defendants that is related to Texas.

## CONCLUSION

For the foregoing reasons, the plaintiffs' constitutional tort claims against all of the individual federal defendants should be dismissed for failure to state a claim. In addition, with the exception of Texas residents Tarango and Gelista, the plaintiffs have failed to demonstrate personal jurisdiction over any of the individual federal defendants.

Dated: July 24, 2014

Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

KENNETH MAGIDSON
United States Attorney

RUPA BHATTACHARYYA
Director, Torts Branch

C. SALVATORE D'ALESSIO, JR.
Assistant Director, Torts Branch

/S/ Edward J. Martin
EDWARD J. MARTIN
Attorney-In-Charge
N.Y. Attorney Registration No. 2526739
Admitted *Pro Hac Vice*
U.S. Department of Justice
Civil Division, Torts Branch
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
Tel: 202-616-1024
Fax: 202-616-4314
Edward.Martin2@usdoj.gov

Counsel for the Individually
Named Federal Defendants

**CERTIFICATE OF SERVICE**

Pursuant to Local Rule 5.3, I hereby certify that on July 24, 2014, the foregoing motion was served on counsel of record electronically by means of the Court's CM/ECF system. In addition, a copy was mailed to the party listed on the ECF docket as not receiving electronic filings, Manuel Barba.

Dated: July 24, 2014     /S/ Edward J. Martin
             EDWARD J. MARTIN