IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION


ZAPATA ET AL                          )
                                      )
                                      )
VS.                                   ) CIVIL ACTION NO.
                                      ) 1:13-CV-22
                                      )
BARBA ET AL                           )




MOTION HEARING
BEFORE THE HONORABLE ANDREW S. HANEN
OCTOBER 30, 2017




A P P E A R A N C E S


FOR THE PLAINTIFFS:

    MR. BENIGNO TREY MARTINEZ III
    MARTINEZ BARRERA MARTINEZ LLP
    1201 E. Van Buren Street
    Brownsville, Texas 78520
    Phone:  956.550.4868


FOR THE DEPARTMENT OF JUSTICE, DEPARTMENT OF HOMELAND
SECURITY:

    MR. NATHAN MICHAEL SWINTON
    US DEPARTMENT OF JUSTICE
    20 Massachusetts Avenue NW
    Washington, DC 20001
    Phone:  202.305.7667

THE COURT: All right. Gentlemen, be seated.

All right. We're here in 13-CV-22.

And the one remaining issue in this case that's been outstanding for quite a while has been the Freedom of Information Act request. And I guess, Mr. Martinez, I'd like to start with you. And if you could tell me what it is you haven't gotten that you think you ought to get.

MR. MARTINEZ: Good afternoon, Judge. First off, I think it may be a little bit more clear if -- if I give the Court a little bit of background as to where we're at factually.

So, just this summer, and -- and -- and the Court may already know this, just this summer, we had the last two remaining Defendants tried up in D.C. And we actually spent three weeks in trial up there and -- and they were eventually convicted at the end of July.

Over the course of that trial, a lot of the stuff that we were asking for actually came out as information in the trial. And so we were subsequently following up with the U.S. Attorney's Office asking for information, such as, for example, we found out that one of the Defendants who was actually testifying against the Defendants in trial, his whole family was paroled

here into the United States over the last six years, including his wife, his kids, a mother-in-law, a father-in-law, and they all got paid for being here for the last six years.  And so we're trying to find out information regarding that.

We found out more information regarding --

THE COURT:  The federal Government's paying them to be here?

MR. MARTINEZ:  Absolutely.  And we were -- we had no idea as to that, so, in our supplemental response, we have now included some of these requests that we feel, at this point in time, one of the exemptions that the Government is relying upon is the fact that there's still an investigation going on since 2011.  And since the last two Defendants have now been to trial and we're going up to D.C. for sentencing this Friday for sentencing Monday and Tuesday, we feel that this exemption, obviously, and one of the main ones that they're relying on, doesn't apply and we're still asking for documents that they're withholding under privilege.

And I'll let Mr. Tijerina get into some of the -- the more legal arguments regarding that but, factually speaking, I think we're still entitled to information that -- that the families are looking for simply for closure purposes.

And so that's where we're at on the time line, Judge.

THE COURT:  Mr. Tijerina, is there -- are there -- can you give me some more specifics about what it is, okay, I -- yeah, obviously, I guess if -- one of the categories I saw, or something, was like ballistics reports.  That probably came out during the trial, I would guess.

MR. MARTINEZ:  It -- it -- it did.  And -- and -- and now I think it -- all that should be discoverable to us.

MR. TIJERINA:  Correct.  As far as any others, I know there is the -- the Government has stated that they withheld the summaries of investigations, different reports, the -- a -- a lot of the different -- the DA held a report of investigations, as well as the FBI, I.C.E., and we'd like to get those reports as well.  That is something that we've requested from the very beginning and haven't been able to obtain.

A -- a lot of this information, they're saying, is being withheld for different exemptions that we don't think apply here because of the -- the circumstances of the guns being crossed over by the Government as far as our allegations are concerned.  And so we don't think that would be any sort of exemption

for investigative purposes or Government --

THE COURT:  Such as what, though?  That's -- here's my problem is -- is -- and it's not y'all's fault necessarily but, you know, I used to say, okay, I sent out a Request for Production, I wanted one through 30, here's the response I got one through 30, they answered 15 of them and they stiffed me on 15 and I want my other 15.  But I don't have like a laundry list, at least that I know that's in the record, that says here's exactly what we asked for and here's exactly why the Government said we couldn't have it.  I mean, do I have that somewhere?

MR. TIJERINA:  They've -- they've provided an index of documents that they've withheld and --

THE COURT:  But I don't know what you asked for.

MR. MARTINEZ:  And --

THE COURT:  That's -- that's my problem.  I don't have a request and then a response and a request and then a response.  At least I -- if it is, I can't locate it.

MR. TIJERINA:  Okay.  Well, it was -- it was basically we had the initial requests that are sent to the different governmental entities and our request -- and our pleadings asked for relief pursuant to FOIA

which, at that time, we'd asked for any documents related to the investigation, related to the -- to the death of Jaime Zapata, to the attempted murder, any other of the FBI reports, investigations on the vehicle in question.  And we didn't receive anything for over four years.

We'd asked for it early in 2011, filed suit two years later and it wasn't until October of 2015 that they finally started producing documents.  But they withheld and, quite frankly, we -- it's a Freedom of Information request and so they -- they -- they need to give us all these documents.  And it's not the same burden as we would have under a Request for Production where --

THE COURT:  Well, I'm not sure -- no, no, it's not -- I'm not talking about who's got the burden of saying proof.  I don't know what's been asked -- I mean, you're basically claiming, hey, we're getting stiffed.  The Government's basically claiming, hey, we did everything we had to do.  You know, we've complied with the law.  And, you know, I need some way of making apples and oranges, you know, match up where I can figure out who's right.

MR. MARTINEZ:  Judge, what if we sit -- sit back and -- and -- and, rightly so, I mean, as far as,

you know, our initial request went out, obviously, to the agencies and then we had to file suit and so it -- it comes in kind of paragraph form. But, you know, I don't have a problem sitting back and -- and coming up with a chart and comparing it to the index that the Government has given us regarding the information they withheld so that the Court has something clear so that we can address it.

THE COURT: Well, and there may be things that six months ago Mr. Swinton and the other folks at the U.S. Attorney's Office said, or justice department said, you can't have because they're getting ready to try these guys.

MR. MARTINEZ: And that's correct, that's exactly --

THE COURT: And now that the trial's over, and I know that they're saying it's -- you know, that -- that maybe doesn't change it or doesn't change it for everything, but there's bound to be some stuff that came out during the trial that is now an open record.

MR. MARTINEZ: There's a lot of stuff that came out in the trial that both -- both the Zapata family and as well as the Avila family literally just discovered, you know, as it was coming out in testimony. And so this is some of the information that we're

requesting, including some -- you know, for -- it's not the Government -- it's not Mr. Swinton's fault, but, I mean, they literally didn't have a -- a death certificate for Jaime Zapata for a long time.  And -- and as well as an autopsy.  And so these are the things that did come out at trial that -- that we're looking for, as well as the information.  I mean, obviously, it was a little surprising to everybody that all of a sudden the Defendant who was testifying against one of the other Defendants, his whole family was paroled over here and has been paid by the Government for the last six years to be here.  And so we'd like to know information regarding that as well, you know, because it's something that's concerning to the families.

And -- and, so, just information that, you're right, was -- was, according to the Government's argument, exempt prior to this trial and now they're sitting back and saying, well, actually, this exemption doesn't end until basically the -- the final appeal is done.  And I think, at least with the five Defendants that plead guilty, I mean, they waived that right and they're getting ready to go for sentencing.

Now, I guess, unless the Court imposes an illegal sentence, which I don't think is going to happen, you know, then it will be finalized at that

point in time, which will be next Tuesday.

THE COURT:  Mr. Swinton, why don't you -- you weigh in here whenever you want to but, I mean, you've -- you've heard my problem is I can't figure out what to -- what's been requested and what's been produced because, I mean, you've produced some stuff to them, I think.

MR. SWINTON:  Correct.  May I approach, Your Honor?

THE COURT:  Yes.

MR. SWINTON:  That's correct, Your Honor.  I think the record shows the Government produced 936 responsive pages and also pointed the Plaintiffs to approximately 1300 pages of material that had already been made in the public record.

Regarding the recent filings and specifically Plaintiff's request for information from the criminal proceedings, we did note in our filing from yesterday that the 7A investigation continues on through the appeals process for purposes of the exemption.  And that's well established in the case law.

We also noted that the Government has no obligation to supplement, have any sort of ongoing supplementation of its search and responses.  So for FOIA purposes, and -- and this is different from

discovery, but for FOIA purposes, once the agency conducts its search for responsive records, processes those documents and produces them, it's not under an obligation to continue to search and update the search in -- in order to --

THE COURT:  So if I ask you for documents and you give me a response that said we don't have to produce them because of "X" and "X" goes away, you then don't have to produce them?

MR. SWINTON:  I think, in that case, that -- that would be 7A, I think, Your Honor.  I -- I'm not sure of another exemption where that would dissipate in that fashion.  I guess, suppose -- perhaps --

THE COURT:  It would seem like your exemption would go away and you would then have to produce it.

MR. SWINTON:  Perhaps if the information was classified.  And I also think the deliberative process privilege now under an amendment to the statute lasts for only 25 years.  It may be the case in that instance that -- that there could be production of documents required.

Here, in addition to 7A -- first of all, the investigation isn't closed for purposes of 7A.

THE COURT:  Okay.  Why?  Other than the

appellate process, why?

MR. SWINTON:  Well, that -- that's -- that's -- that is the reason.

THE COURT:  Okay.  All right.

MR. SWINTON:  And the -- and the cases that we've cited in our brief support that proposition.

Additionally, Plaintiffs didn't ask -- didn't request the specific information in their original request.

I believe the language was a request for information related to the investigation.  And, again, there -- there has to be a stopping point in time.  And the case law establishes that the stopping point in time is when the agencies conduct their searches for responsive records.  Here, those searches occurred in 2013 and 2014, so the agencies aren't responsible for locating and producing records that were created after that point in time.

And, here, the criminal proceedings that are being referenced by Plaintiffs were from last summer.  So the Government isn't responsible for producing those in -- that information.

THE COURT:  Well, the -- the new documents that were created perhaps but what about the old documents that you didn't give them?

MR. SWINTON:  Well, it's not clear to me by any means that those documents were introduced in the criminal trial.  If they were, then they -- they would be publicly available through the Court's docket, I assume, but I --

THE COURT:  But, like, say, a death certificate.  I mean, that would have been created years ago.

MR. SWINTON:  I -- I -- I'm not -- I'm not certain of that particular document, Your Honor.  I can't speak to that one directly.  But, here, the -- the records that were being withheld under 7A include mostly -- mostly things like reports of investigations from the FBI, from DEA, from ATF.  And it's not clear to me in any way that those specific documents were made public in the -- in the criminal proceeding.

It -- it sounds like, instead, that there was information discussed in testimony.  And so the only document that is created with that testimony would be the trial transcript and that certainly was not part of the Gov -- of Plaintiff's request here nor could it have been, again, because that document would postdate the request.

And it's not -- it's also not clear to me that that document is necessarily in the position -- in

the possession of any of the agencies that received the FOIA request here.

THE COURT: What about the documents from the original incident, the original fast and furious where we're walking the guns across the border?

MR. SWINTON: Well, again, the -- the request here was specifically for information related to the investigation into Special Agent Zapata's death and Special Agent Avila's injuries. And so the -- the documents that were withheld were documents pertaining to the investigations into the perpetrators of those actions. And those were the ones --

THE COURT: That -- that's my point that -- now, I don't know if they -- maybe they didn't ask for this other stuff but I -- I had assumed they did. Because I was saying, okay, if that -- the original walking the guns across the border couldn't be related to prosecuting the people that shot them.

MR. SWINTON: Yeah. And I think there has been some -- some, I don't know if disagreement's the right way to say it, but it might be helpful to -- to remind the Court of what the requests were and -- and --

THE COURT: Well, that's my problem.

MR. SWINTON: Sure. And I'm happy -- I'm happy to do that.

THE COURT:  That's why I started where I did because I'm not sure what the requests were.

MR. SWINTON:  And it is different, Your Honor, than a discovery request where you have more specific Requests For Production and then the responses to those.

The back and forth between the Plaintiffs and the agencies are all included in the Government's exhibits, they're all attachments to the declarations filed by the agencies and it includes the different correspondence that contains the request and then the agency's initial response.

The request, as -- as I have them, sought four categories of information; two of which would -- actually weren't technically things that can be disclosed pursuant to FOIA.  The first is answers to questions that the Plaintiffs has posed about the shooting that led to the death of Special Agent Zapata, as well as responses to written and oral questions asked by Senators Grassley -- Senator Grassley and Congressman Issa about the incident.

THE COURT:  Okay.  Why -- tell -- tell me why can't -- why aren't those -- not the former but the latter.

MR. SWINTON:  The responses to written and

oral questions?

THE COURT:  From the United States Congress.

MR. MARTINEZ:  Yeah, Senator Grassley, Chuck Grassley, and then Senator -- I mean, Congressman Issa is out of California.

MR. SWINTON:  So I -- I -- I think those have either been produced or those are part of the publicly available information that the Government directed the Plaintiffs do.  What was withheld were drafts and discussions about how to respond to those questions.  Those were withheld pursuant to exemption five, which includes various litigation privileges afforded to the Government, including the delivery of process privilege.  And that's set forth most clearly in the declaration of Vanessa Brinkmann -- Brinkmann from the Office of Information Policy at DOJ.

Final versions of those, I -- I -- are public documents and -- and there's no basis to withhold them.  The Government here withheld drafts and other deliberative materials that went to forming those -- those final responses.

The second category of information requested by Plaintiffs were copies of various investigative documents, FBI 302's, which is an investigative document, DEA 6's, which is a DEA report of

investigation, effectively, I.C.E. reports of investigations, ATF documentation or other investigative reports about the incident.

I believe that the 7A exemption has been applied largely to those as discussed in our briefs and in the declaration and other privileges -- or other exemptions, excuse me, apply to those materials as well.

The third and fourth categories, again, aren't -- aren't requests for documents. There was a request for the opportunity to inspect the vehicle where Special Agent Zapata was shot. And that's -- that's not something that is covered by FOIA.

And then the fourth was there were ideas about legislation to protect lives and members of law enforcement, particularly those working in Mexico. And, again, that's not a request for -- for documents.

Through further clarification of what the Plaintiffs were seeking in discussions with the agencies, OIP, for example, gave them a list of different categories of information and said this is -- this is what we kind of have within the scope of the responsive material, tell us what you're interested in.

And the Plaintiffs checked the boxes next to the different categories of information that they specifically wanted. And that's covered in the

processing materials attached to the Brinkmann declaration as well.

So, again, I think the -- the point here is that the request was for specific information about the investigations into the death of Special Agent Zapata, specifically, and those were -- that was the request that the agencies were responding to.

THE COURT: Well, how do I -- and I'm asking both sides this -- how -- how do I bring this to a successful or even an unsuccessful conclusion?

And I know the easy answer, Mr. Swinton, you'll say just grant my summary judgment and let me go back to Washington.

MR. MARTINEZ: No, I -- I --

THE COURT: But -- go ahead.

MR. MARTINEZ: I'm -- I'm -- and, Judge, you know, I think given -- given what it is that we discovered in -- in -- in July at the trial and given the fact that this trial is over and -- and -- and -- and these Defendants, at least five of the seven Defendants, their -- their appellate rights will have been waived by Tuesday, unless the Judge gives an illegal sentence, then I think by next Tuesday, you know, we should have all that information.

You know, and I think this -- this issue in

regards to, you know, these people being paroled into the United States, you know, in order to get testimony from these other Defendants, or cooperating Defendants, I mean, that's -- there's got to be papers or information, you know, paroling these folks in here and how much they were paid while they were here for these six years and then what their status is now.  And so that's just information that I think we need.

And I don't have a problem coming up with a chart or working with Mr. Swinton and sitting back and -- and addressing these one at a time if that's what the Court would like.  But, again, I think we've -- we've now turned the page and we're in a new chapter given what happened this past July.

THE COURT:  Here's what I -- it is what I'd like, actually.  I mean, and -- and perhaps maybe, Mr. Swinton, I apologize to you because maybe we could have done this and let you appear by phone, but I -- I wasn't -- I wasn't quite aware of where the Washington, D.C. thing was -- was status wise.

I'd like y'all to get together, and -- and maybe since we have Mr. Swinton down here, you can do it now --

MR. MARTINEZ:  Sure.  Or --

THE COURT:  -- but figure out what it is

that -- that you want that you haven't gotten that you've requested.  A lot of this material is not going to affect the appeal one way or the other because, whatever the appellate process is, once they're sentenced, I mean, it's in the can.  They -- they can't go outside the record.

MR. MARTINEZ:  Right.

THE COURT:  What is within the appeal is -- is probably governed by the exception -- exemption, not exception, the exemption, at least while the appeal's going on.  But, again, if -- if a number of these people have plead guilty and have a plea agreement that waives their appellate rights, so, I mean, how long can the appeal go on?

MR. MARTINEZ:  Right.

THE COURT:  You know, six to nine months maybe but -- but -- and I'm just throwing that out.  I don't know what the D.C., you know, circuit has on their plate but --

MR. MARTINEZ:  They tend to move pretty quick apparently after what happened last week.

THE COURT:  Well, you know, if they've waived it, I mean, it -- it makes it pretty short.

MR. MARTINEZ:  Right.

THE COURT:  But, again, I don't know how the

D.C. circuit even views waivers.  I mean, we know how the Fifth Circuit does.  They say, you've waived your appellate rights and then they go ahead and hear the appeal.  So they feel strongly both ways.

But let's -- let's boil this down to, you know, a finite and something more definite that I can get my grip on where -- where the Plaintiffs can say, Judge, here's what we -- we want and they've admitted they've got it and they're not giving it to us.

And that way Mr. Swinton can say, here's what they want and they're right, we didn't give it to them and here's why we didn't give it to them.

And -- and to the extent it's possible, and I know even more so than -- than Requests For Production, you do write things as broadly as you can write them because you don't know what they've got.  I mean, you're -- you're kind of shooting in the dark trying to figure out -- but to the extent you can be specific, or at least specific within categories.

So let's say one of the categories is we want to say -- see the -- the actual gun walking documents.  Okay, that's a finite category that maybe or maybe not you haven't asked for.  I mean, what I'm hearing Mr. Swinton say that we didn't really ask for that because you were -- they were focusing on the

actual shooting deaths in Mexico.

But, clearly, those don't have anything to do with the trials.

MR. MARTINEZ:  No, I think -- I think -- and I'm sorry for interrupting.  I think one of -- one of the issues that we have heard or that's come down the pike is that two of the weapons that were used for the attack and -- and -- and murder, in fact, came from this gun walking operation.

THE COURT:  No, I understood that.

MR. MARTINEZ:  Okay.

THE COURT:  I mean, I was assuming that. But, I mean, the -- the -- they're not prosecuting the people that did that.

MR. MARTINEZ:  No.

THE COURT:  And whatever statute of limitations there ever was has bound to have run by now. And especially if they were cooperating with the ATF, it's kind of hard to believe -- and I don't know that they are, that's a hypothetical --

MR. MARTINEZ:  I understand.

THE COURT:  -- but, I mean, if they were doing it at the behest of the ATF, it doesn't seem like the Federal Government could turn around and then prosecute them.  So those might fall into a different

category where there's not an exemption that applies; whereas something that may more directly applicable to the actual shootings and what these guys got prosecuted for, because they didn't get prosecuted for walking the guns across the border.

MR. MARTINEZ:  No, no, Judge.

THE COURT:  They didn't have anything to do with that.  You know, that may be something that falls under this, you know, the 7A exemption.  Because that does have to do with the appeals that are ongoing, or that may be.  We assume will be ongoing after Tuesday or whenever.

Now, how many Defendants actually got prosecuted?

MR. MARTINEZ:  Seven.

THE COURT:  And how many were convicted or plead guilty?

MR. MARTINEZ:  Seven got extradited, five plead guilty and then two went to trial.

THE COURT:  All right.  And what's the result of that?  Were they found guilty?

MR. MARTINEZ:  They were found guilty after two days of deliberation.

THE COURT:  Okay.

MR. MARTINEZ:  And -- and then on -- so

we'll be up in -- in D.C. Monday and Tuesday because they're doing the sentencings Monday and Tuesday of all the Defendants.

THE COURT:  Including the two that went to trial?

MR. MARTINEZ:  I think including the two that went to trial because we're trying to sit back and -- the family has been back and forth to D.C. for several different things and so the -- the Judge, who's actually a very good Judge out of El Paso, believe it or not, has come in and -- and been very good about trying to condense everything so they don't have to go through this.

THE COURT:  Who tried it?

MR. MARTINEZ:  Judge -- Judge McBride?  I think that's his name.  Is that right?

MR. SWINTON:  I think it was Judge Lambert.

THE COURT:  Oh, Royce Lambert?

MR. MARTINEZ:  That's right.  That's right.

THE COURT:  Yeah.  He wanted to go to Baylor but he had to go to UT instead.

MR. MARTINEZ:  Oh, poor guy.

THE COURT:  He is -- he is a UT grad.

MR. SWINTON:  Your Honor, if I -- if I may, I just want to make one point that we noted in our -- in

a -- in a brief -- in our footnote in our brief but I just wanted to make you clear of it here as well.

With regard to the -- the temporal nature of exemption 7A, we did note that other exemption 7 -- aspects of exemption 7 would likely apply to that material as well even if 7A expires.  So just to make sure we're all on the same page, the mere fact that 7A may go away doesn't mean that that information would be automatically disclosed because it could be withheld under another aspect of exemption 7.

There's also overlap --

THE COURT:  Well, and if y'all -- and if that's the case, what I'm -- I'm envisioning is y'all will give me an affidavit that says we're keeping this because of this.  Now, I'd like a specific reason why you're keeping it.

MR. SWINTON:  Absolutely, Your Honor.  And -- and that's exactly what I intend to do.

THE COURT:  And by that, I mean, don't just mean that it's an ongoing investigation.  I mean, I want to know what it's an ongoing investigation of.

MR. SWINTON:  Uh-huh.

THE COURT:  You know, because, otherwise, the Government would never have to produce anything, we could just say, well, we're investigating something.

MR. MARTINEZ:  Well, and -- and some of the stuff, I think, is, you know, again, it's documents that we don't have any access to but we know they're out there because of what was testified to at trial.

Obviously, the defense lawyers saw something that led them to go and try to impeach the credibility of some of these witnesses and we've never seen those.

So, we'll -- yeah, we'll -- we'll sit down and -- and we'll get that together and whether it be here or -- or in D.C., we'll get it done.

THE COURT:  Okay.  Well, that's what I'd like.  And I'd like to -- and -- and then we'll -- that will get into the nutshell for me and I can either grant or -- the Government's Motion For Summary Judgment or I can deny it and order them to do X, Y and Z.

And -- and at least then we'll have a clear record.  And if I'm wrong, the appellate court will have a clear record because I'm -- I don't think the appellate court could figure out what's been asked for and what hasn't been and what's been produced and what hasn't been so --

MR. MARTINEZ:  Absolutely, Judge.  Do you have a date that you'd like this done by?

THE COURT:  Well, what makes sense to y'all? 30 days?

MR. MARTINEZ:  I think that's plenty.  I think that's plenty.

THE COURT:  Does that work for you, Mr. Swinton?

MR. SWINTON:  Sure.  30 days to have further discussions?

THE COURT:  Yeah.  If y'all kind of a -- a meet and confer and reduce it to writing.  And then, if you can't agree, you know, set out the disagreement for me.  So why don't we do it by -- I tell you what, let's do it by the end of November.

MR. MARTINEZ:  Absolutely.

THE COURT:  So that's a little more than 30 days but -- and then I'll figure out what we need to do and, if we need another hearing, we'll -- we'll do it.

MR. MARTINEZ:  And so what we'll do is we'll get to the Court either our agreements and/or disagreements and then potentially a status of what it is that will be handed over or not handed over?

THE COURT:  Right.

MR. MARTINEZ:  Okay.

THE COURT:  That works for me.

MR. SWINTON:  Sure.

THE COURT:  Okay.  Thank y'all.

MR. MARTINEZ:  Thank you, Judge.  May we be

excused?

THE COURT:  You may.

(COURT IN RECESS FOR THE DAY.)

REPORTER'S CERTIFICATE

I certify that the foregoing is a correct transcript

from the record of proceedings in the above-entitled

matter.

_/s/Sheila E. Perales_____
SHEILA E. PERALES, CSR RPR CRR
Exp. Date:  Dec. 31, 2018